*1264 OPINION.
Arundeld:
The respondent, in support of the proposition raised by his amended answer that invested capital should be reduced by the fuE amount at which the stock was retired, relies upon our decision of a similar issue involved in the case of Clearfield Lumber Co., 3 B. T. A. 1282. The petitioner, on the other hand, has no fault to find with the respondent’s adjustment except in so far as he reduced net income by a tentative tax to determine the amount of current earnings available for the redemption of the stock, and cites the case of Hutchins Lumber & Storage Co., 4 B. T. A. 705, as being opposed to the contention now being made by the respondent.
We find no inconsistency between the two cases. In the Clearfield case, where all of the taxpayer’s preferred stock and about one-half of its common stock was retired prior to and during the year 1918 at par, the respondent during the taxable year in controversy, related the retirements made to the earnings for the year. This we held to have been erroneous on the principle that a retirement of the stock at the price paid for it does not impair surplus, but simply amounts to a return to the stockholder of the amount of his capital contribution.
The facts in the Hutchins case presented a different situation. There, the petitioner not only returned to the stockholder the amount of its original investment, but its proportionate share of accumulated surplus. In that proceeding we said in approving the adjustment made by the respondent:
It was a capital transaction involving a return to this particular stockholder of its capital contribution plus its share in the accumulated surplus, and the paid-in capital and surplus, of which these funds were a part, were lessened by a withdrawal of the same. The purchase by a corporation of its own capital stock eliminates the stockholder without substituting another in its place, repays to the withdrawing member his share of the capital, and reduces the amount of the fund contributed to the common venture.
To the same effect, see Simmons & Hammond Manufacturing Co., 1 B. T. A. 803.
The purchase by the petitioner of a part of its own capital stock was a capital transaction involving a return to the stockholders of the amount of their investment, plus a portion of the accumulated surplus. In the Hutchins case, however, the redemption of stock took place after the first 60 days of the taxpayer’s taxable year and in that respect differs from the facts here, where the retirement was made on February 25, 1918, a date falling within the first 60 days of the petitioner’s taxable year. Subdivision (e) of section 201 of the Revenue Act of 1918 provides that “Any distribution made during the first sixty days of any taxable year shall be deemed to have been *1265 made from earnings or profits accumulated during the preceding taxable years j * * * ” The petitioner’s surplus at the close of 1917 was approximately $1,900,000. The retirement having been made within the first 60 days of the petitioner’s taxable year, it is apparent that no part of the fund used to redeem the stock should be regarded as having been derived from current earnings. Petitioner’s invested capital should be recomputed by reducing the amount thereof, $220,000, prorated over the year.
Our decision on the issue just disposed of renders unnecessary a ruling upon the question raised by the petitioner as to the reduction of net income by a tentative tax to determine the amount available for the retirement of stock. The question is, however, governed by L. S. Ayers & Co., 1 B. T. A. 1135.
Under the second assignment of error, the petitioner claims that the amount of liquidated damages paid by it should be allowed as a deduction from gross sales for the year 1918 or as a loss sustained under the contract for that year. That the breach of contract occurred in 1918 is not disputed. The petitioner, of course, knew in 1918 that it had made a late delivery, but it did not admit its liability in that year or receive any notice from the Government in 1918 of an assessment of, or an intention to assess, liquidated damages on account of the late delivery of material under the contract. No claim was made by the Government for damages until during the year 1925, when the full amount was deducted from a tax refund for the year 1919. Until then, the claim existed only in contemplation and there was nothing for the petitioner to accrue on its books or pay. The respondent’s action is sustained. M. C. Stockbridge, et al., 2 B. T. A. 327; Bump Confectionery Co., 4 B. T. A. 50; and Empire Printing & Box Co., 5 B. T. A. 203.
The petitioner, prior to the taxable year, expended from $8,000 to $15,000 each year in the development of secret processes and for-mulae for finishing leather, and for leather finishes. The cost of chemicals, labor and raw material necessary for the perfection of the processes and formulae was charged to operating expense and the petitioner can not now accurately establish the amount expended for such purposes. The processes and formulae developed and used by the petitioner were necessary for the successful conduct of the business and contributed towards the earning of large profits, not only in the taxable year but during prior and subsequent years as well. That the processes and formulae were valuable intangible assets in the hands of the taxpayer can not be seriously disputed.
The corporate books likewise fail to show capital charges for certain expenditures made by the petitioner after 1901 in connection with plant additions and improvements referred to in our findings *1266 of fact. The revenue agent who examined the petitioner’s books fully recognized the fact that many of these items should have been capitalized and made a few changes in the accounts to bring them in harmony with the facts. It was entirely impracticable, however, to rewrite the books to disclose the correct situation in this particular.
In the computation of invested capital the respondent allowed no value for the secret processes and formulae developed and owned by the petitioner, and did not include, in any amount, many capital items improperly charged to expense. In Deltox Grass Rug Co., 7 B. T. A. 811, special assessment was allowed because of the inability of the taxpayer to determine from its books the amount of development cost improperly charged to expense. See also The Viscose Co., 3 B. T. A. 444, and Northwestern Yeast Co., 5 B. T. A. 234.
It is our conclusion, from all the evidence, that the petitioner is entitled to have its tax liability computed under the provisions of section 328 of the Revenue Act of 1918.
The petitioner is contending that the Board is without jurisdiction to increase the deficiency, on the ground that the period within which any further assessment might be made had expired prior to the date of the mailing of the notice of deficiency. Inasmuch as the computation of the tax under section 328 may reduce the unpaid tax to a sum not greater than the present outstanding and unpaid assessment, this question will not be determined until the further hearing under Rule 62 (c) is had.
Recom/putation of the deficiency should he made under Rule 62 (c).