D. N. & E. WALTER & CO., INC., and WALTER REAL ESTATE CO., PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7618. Promulgated February 10, 1928.

*W. W. Spalding, Esq.*, for the petitioners.
*P. J. Rose, Esq.*, for the respondent.

628

OPINION.

ARUNDELL: As to the first issue, the D. N. & E. Walter & Co., Inc., contends that it acquired good will from the predecessor partnership of the value of $268,777, which it is entitled to have included in its invested capital, as a paid-in surplus, and that respondent erred in his determination of the tax liability for 1920 in failing to so include it. Respondent entered a general denial to petitioner's contentions.

Succeeding to the business of the partnership of D. N. & E. Walter & Co. in 1896, the petitioner, bearing the same name, came into possession of an established business which for 38 years had been a successful enterprise. Founded in 1858, the business had been conducted under the same management, without change in business policies, continuing to market the same commodities, and with a uniformly satisfactory record of earnings and high return on the investment. Its sales territory covered all of the Pacific and a portion of the Rocky Mountain States. The evidence is that the reputation of the business for fair dealing was of the highest, and that the commodities which it handled were of the best grade. It appears further that with the acquisition of the business, there passed to the petitioner valuable agency rights which gave it a virtual monopoly on the products of certain eastern manufacturers who were leaders in their lines.

Two witnesses, both members of competitor firms which had enjoyed business relations with petitioner's predecessor and who were familiar with the business as it was being conducted in 1896 and prior thereto, testified as to the reputation of the partnership for business integrity, the desirable character of its clientele, and the high class of commodities in which it dealt. Both because of their knowledge of the affairs of the partnership and their long experience in the same line of business, are qualified to give opinion evidence as to the value of the good will which passed to the petitioner in 1896. One of these witnesses has been engaged in the same line of business in San Francisco for the past 55 years, as a member of a nationally known business organization. The other had conducted a similar

business in the same city for 10 years prior to 1896. The first testified that had he, acting for his organization, sought to purchase the petitioner's business in 1896, he would have been willing to have paid $250,000 for the good will. The latter expressed the opinion that the good will of petitioner's business in 1896 was worth in the neighborhood of $250,000.

For the ten years immediately preceding incorporation, the earnings of the business represented a return of 11.7 per cent on the net tangible investment. During the last three years of this period the business was hampered and retarded by a financial depression or panic; credits were tightened, which resulted in the dropping off of sales; and losses were sustained through the financial embarrassment of customers to whom credit had been extended. As one of the petitioner's officers stated, more time was devoted to the collection of accounts than to making sales. The situation was further complicated by the prevalence of a railroad strike which made it difficult to get merchandise shipments through from the East. If these three years be disregarded as abnormal and not representative of the normal level of profits, as indeed they should under the facts of this case, the earnings of the partnership represent a return of approximately 14 per cent on the net tangible investment. Analysis of the earnings of the petitioner for the four years immediately succeeding incorporation shows a like return on the net tangibles. Taking the evidence as a whole, we are of the opinion that the actual cash value of the good will acquired by the petitioner from the predecessor partnership was, at the date of acquisition, $225,000.

Petitioner seeks to have the whole of the good will value included in invested capital as a paid-in surplus. The net value of the tangible assets received from the partnership was equal to the par value of the stock given in exchange for all of the partnership assets. Good will is intangible property, section 325 (a), Revenue Act of 1918; and intangible property may not be included in invested capital as a paid-in surplus, *Appeal of Herald-Despatch Co.*, 4 B. T. A. 1096. Petitioner acquired, with shares of stock, a mixed aggregate of tangible and intangible assets of a total cash value of $873,000. The par value of the shares of stock given in exchange for these assets was $648,000. The stock must be deemed to have been issued for the two classes of assets in the same proportion that the cash value of each class bears to the total cash value of the assets. *Appeal of St. Louis Screw Co.*, 2 B. T. A. 649. The value of good will, $225,000, represents 25.773 per cent of the total value of the assets. Therefore, of the total par value of the stock issued for the assets of the partnership, 25.773 per cent thereof, or $167,009.04, is deemed to have been issued for the good will. Since the lower of the three limita-

630

tions prescribed by section 326(a) (4) of the Revenue Act of 1918 under which good will may be included in invested capital, is, in this case, the par value of the stock issued therefor, the petitioner is entitled to have the good will included in invested capital in the amount of $167,009.04.

The second issue relates to respondent's reduction of invested capital of the D. N. & E. Walter & Co., Inc., by the sums of $145.44, $32.80, and $5,646.43, for additional taxes for 1915, 1916, and 1917, respectively. In the petition the petitioner sets forth as facts in support of the allegation of error that these additional taxes "were paid on September 15, 1920, which was within the due date of said taxes as indicated by the notice and demand for the payment of the taxes by the Collector of Internal Revenue"; and that "the tax-payer had the use of and did use this amount in its business until it was paid to the Collector on September 15, 1920." As a proposition of law, petitioner sets forth that these taxes "did not become due and payable until September 15, 1920," and that they "should not be deducted in their entirety from invested capital for 1920, but should be prorated from the due date of payment, namely, September 15, 1920, and only the prorated amount (108/366 of $5,824.67) or $1,718.75 deducted." This issue, apparently, has been entirely abandoned by the petitioner, for nothing was said at the time of the hearing, and nothing is contained in the brief filed subsequently, in respect thereof. On the other hand, petitioner, without amendment of its petition, seeks to inject an entirely new issue which involves solely the merits of the assessment of these additional taxes. Respondent, in his brief, objects to the introduction of a new issue, and rightfully so. We may not assume jurisdiction of issues not properly raised in the pleadings. *Appeals of Dixie Manufacturing Co.*, 1 B. T. A. 641, and *Buffalo Wills-Sainte Claire Corporation*, 2 B. T. A. 364. Respondent's action in reducing invested capital for 1920 by the entire amount of additional taxes found due and assessed for 1915, 1916, and 1917, is sustained upon authority of *Appeal of Hutchins Lumber & Storage Co.*, 4 B. T. A. 705; and *Appeal of Berks Foundry & Manufacturing Co.*, 5 B. T. A. 756.

The third issue relates to respondent's reduction of invested capital of the D. N. & E. Walter & Co., Inc., by the sum of $9,517.63 for additional income and profits taxes for 1918. The petition sets forth that this reduction of invested capital is wrong since the tax has not been assessed, and final determination of the tax liability for that year had not been made, at the time of filing the petition, under the Board's decision in Docket No. 4006 (4 B. T. A. 142). For the reason stated in the decision on the preceding issue, the respondent's action is sustained in principle; but the amount by which invested capital

should be properly reduced is the deficiency as determined under the Board's decision in Docket No. 4006.

The fourth issue relates to respondent's reduction of invested capital by $55,089.21, on account of an alleged tax liability of $130,729.03 for 1919, prorated from the dates the several installments thereof became due and payable. Petitioner contends that respondent erred in his determination of the tax liability for 1919 in that he failed to include in invested capital for the year the following items:

(1) Ten thousand dollars representing the cost of stock of the Panama Pacific International Exposition Co. owned by the taxpayer throughout the year 1919, but improperly charged off the books prior thereto; (2) $10,000 representing the cash paid on October 31, 1907, for the good will of the business of W. D. McCann. On that date this taxpayer purchased the business of W. D. McCann and paid him $10,000 in cash for the good will of his business, which amount was erroneously charged off on the taxpayer's books at the date of the payment in 1907; (3) $268,777, representing the cash value of assets (good will) paid in for stock or shares in excess of the par value of the stock issued therefor.

Under the provisions of section 274 (g) of the Revenue Act of 1926, we may consider such facts with relation to the taxes of other years as may be necessary to correctly redetermine the amount of the deficiency for the year before us.

As to the first alleged error in respondent's determination of the tax liability for 1919, there is no evidence that petitioner owned stock of the Panama Pacific International Exposition Co. during 1919.

As to the second alleged error, the evidence conclusively shows that petitioner acquired the business and good will of the McCann-Allen Co., a partnership, in 1907, which business it was continuing to operate during at least a portion of the year 1919; and that in addition to the sum paid for the tangible assets of the McCann-Allen Co., petitioner paid specifically for the good will, the sum of $10,000 cash. We hold that respondent erred in failing to include this item of good will in invested capital for the purpose of determining the petitioner's tax liability for 1919.

As to the third alleged error, we have previously, in our decision on the first issue for 1920, found that petitioner issued capital stock of the par value $167,009.04 for the good will of its predecessor which had an actual cash value, at the date of acquisition, of $225,000. For the reasons stated in our decision on the first issue, we hold that petitioner is entitled to include the good will acquired from its predecessor in the invested capital for 1919 in the amount of $167,009.04.

Evidence was submitted by petitioner, during the hearing, of the payment of $5,000 to Baldwin and Howell, real estate agents, for securing a lease on a certain property in San Francisco, Calif., and of the loss, in 1919, of the good will acquired from the McCann-Allen Co. by reason of abandonment of the business acquired from the latter company. The purpose of submitting this evidence was apparently to establish errors on the part of respondent in failing to include in invested capital for 1919, the unamortized fee paid to Baldwin and Howell for securing the lease, and in failing to allow a deduction for 1919 on account of the loss of good will, previously acquired from the McCann-Allen Co., incident to the abandonment, in that year, of the business acquired from the latter company. But these are matters which are not raised by the pleadings, and the petitioner has made no offer to amend its petition to bring them properly before the Board. For this reason we express no opinion in respect of these matters. *Appeals of Dixie Manufacturing Co.*, *supra*, and *Buffalo Willis-Sainte Claire Corporation*, *supra*.

The last issue is whether petitioners were affiliated throughout the year 1920 and are entitled to have their tax liability for that year determined upon the basis of a consolidated return. We do not need to decide whether control of the capital stock of D. N. & E. Walter & Co., Inc., owned by its employees, vested in Isaac N. Walter and Moritz Walter, as Trustees, as contended by petitioner and now admitted by respondent in his brief. Assuming this to be true, the record then discloses that only 28.91 per cent of the capital stock of the Walter Real Estate Co. outstanding at January 1, 1920, and 1921, was owned by the same persons who owned or controlled 90.67 per cent of the capital stock of D. N. & E. Walter & Co., Inc. It may be said that the full extent to which the evidence goes is to show that the officers and directors of the two corporations were substantially the same; that 90.67 per cent of the capital stock of D. N. & E. Walter & Co., Inc., was owned or controlled by the Walter family; that all of the stock of the Walter Real Estate Co. was owned or controlled by the Walter family; and that there were intercompany transactions carrying no burden of compensation. But there were members of the Walter family who owned 71.09 per cent of the stock of the Walter Real Estate Co. who neither owned or controlled any of the stock of D. N. & E. Walter & Co., Inc. Was the stock of the Walter Real Estate Co. which they owned controlled by the owners of the other 28.91 per cent of the stock of that company and the persons who owned or controlled 90.67 per cent of the stock of the D. N. & E. Walter & Co., Inc.? The question is unanswered by any evidence of record; hence, the presumption is entitled to prevail that the record owners of the stock of the Walter Real Estate Co. are the actual owners and exercise the control of same. *Appeal of Fort Cumberland Hotel Co.*, 1

B. T. A. 1258. The mere fact of family and business relationship standing alone is insufficient to constitute control or warrant persons standing in such relationship constituting the same interests, *Appeal of Goldstein Bros. Amusement Co.*, 3 B. T. A. 408; and intercompany transactions or the absence of them, without the necessary stock ownership or control as provided in the statute, is not sufficient to permit or require affiliation. *Appeal of Greenville Coaling and Export Corporation*, 4 B. T. A. 183. The petitioners have failed to establish affiliation, within the purview of the statute, for 1920; and respondent's action in computing the tax liability of each upon the basis of their separate returns is sustained.

Reviewed by the Board.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

GREEN · ,ncurs in the result.

STERNHAGEN, dissenting in part: It seems to me incorrect to include in earned surplus the $10,000 said to be represented by good will purchased in 1907 from the partnership of McCann-Allen Co. The petitioner wrote this off as expense when it was purchased and now in effect affirmatively asserts not only that this write-off was error but that the good will has been an asset ever since and was actually an item of earned surplus at the beginning of 1919. The proof consists only in the purchase in 1907 of all the partnership assets, the payment of $10,000 for the alleged good will, and its charge-off. For all that appears from the evidence the charge-off in 1907 was in accordance with fact and good accounting. Upon what evidence then is the alleged good will shown to be a part of the assets of the corporation in 1919 so as to be properly " restored " to earned surplus? None that has been discovered, and I know of no presumption to take its place.

MURDOCK concurs in this dissent.