DAVID A. REED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12499.  Promulgated September 25, 1928.

*Maynard Teall, Esq.,* for the petitioner.
*P. S. Crewe, Esq.,* for the respondent.

514

516

518

OPINION.

TRAMMELL: The issue with respect to the deficiency asserted for the year 1921 involves the question whether the amount of $2,500 received by the petitioner in that year from the Commonwealth of Pennsylvania as compensation for legal services, under the circumstances set out in our findings of fact, constitutes taxable or nontaxable income. The petitioner treated said amount in his return as nontaxable income. Thereafter, upon audit of said return for 1921, the respondent included said amount as taxable income, and on that basis computed the deficiency which we are here called upon to redetermine.

The petitioner contends that said income is not taxable by the Federal Government for the reason that the compensation was paid to him as an employee of the Commonwealth of Pennsylvania, or if it should be held that he was not an employee, said income is not taxable for the reason that the petitioner was, in any event, an instrumentality or agency through which said Commonwealth exercised an essential governmental function, namely, the collection of revenue necessary to its support and maintenance. It has not been alleged nor suggested that the petitioner was an " officer " of the Commonwealth of Pennsylvania and clearly he was not; hence, our consideration of the issue will be confined to the two propositions of the petitioner just stated.

The very nature of our constitutional system of dual sovereign governments is such as impliedly to prohibit the Federal government from taxing the instrumentalities of a State government, and in a similar manner to limit the power of the States to tax the instrumentalities of the Federal government. *Metcalf & Eddy v. Mitchell,* 269 U. S. 514; 5 Am. Fed. Tax Rep. 5834.

Just what instrumentalities of either a State or the Federal government are exempt from tax by the other can not be stated in terms of universal application, and the determination of this question in particular cases often presents a perplexing problem. However, it is well settled that any agency created and controlled by the one government exclusively to enable it to perform a governmental function may not be taxed by the other. *Gillespie* v. *Oklahoma*, 257 U. S. 501.

It is equally well settled that an "officer" of either government is such an agency or instrumentality of that government that his salary or emoluments can not be subjected to any sort of tax by the other. *Dobbins* v. *Commissioners*, 16 Pet. 435; *Collector* v. *Day*, 11 Wall. 113.

And we have repeatedly held that the salary of an "employee" of a State, or political subdivision thereof, is immune from the Federal income tax. *P. Frank Durkin*, 4 B. T. A. 743; *John E. Matthews*, 8 B. T. A. 209; *Howard Webster Byers*, 8 B. T. A. 1191; *B. F. Martin*, 12 B. T. A. 267.

Also, Congress has affirmatively expressed its recognition of this principle of taxation by providing in the Revenue Act of 1926 as follows:

SEC. 1211. Any taxes imposed by the Revenue Act of 1924 or prior revenue Acts upon any individual in respect of amounts received by him as compensation for personal services as an officer or employee of any State or political subdivision thereof (except to the extent that such compensation is paid by the United States Government directly or indirectly), shall subject to the statutory period of limitations properly applicable thereto, be abated, credited or refunded.

It does not follow, however, that every person who renders service to a State or the Federal government, or who uses his property or derives a profit in his dealings with such government, may clothe himself with immunity from taxation by the other on the theory that either he or his property is an instrumentality of government within the meaning of the rule. *Thompson* v. *Pacific Railroad*, 9 Wall. 579; *Railroad Co.* v. *Peniston*, 18 Wall. 5; *Baltimore Shipbuilding Co.* v. *Baltimore*, 195 U. S. 375; *Gromer* v. *Standard Dredging Co.*, 224 U. S. 362; *Fidelity & Deposit Co.* v. *Pennsylvania*, 240 U. S. 319; *Choctaw, Oklahoma & Gulf R. R. Co.* v. *Mackey*, 256 U. S. 531; *Metcalf & Eddy* v. *Mitchell*, *supra*.

While an "officer" or "employee" of a State government is such an instrumentality of that government that his compensation may not be taxed by the Federal government, an independent contractor is not necessarily so exempt. *Metcalf & Eddy* v. *Mitchell*, *supra*.

As stated by the Supreme Court in *Railroad Co.* v. *Peniston*, *supra*, the exemption is dependent upon the effect of the tax. If the effect of the tax is not such as to hinder the efficient exercise of power by

the instrumentality, or to obstruct an essential governmental function, it may lawfully be laid; otherwise, it may not be.

In rendering the legal services here in question, was the petitioner an employee of the Commonwealth of Pennsylvania, or was he an independent contractor?

The line of demarkation between the status of employee and that of independent contractor, where the facts disclose some of the characteristics of each, is difficult to determine, notwithstanding there have been many court decisions on the subject. By the weight of authority, it appears that the crucial test lies in the right of control, or lack of it, which the employer may exercise respecting the manner in which the service is to be performed and the means to be employed in its accomplishment, as well as the result to be attained.

In *Singer Manufacturing Co.* v. *Rahn*, 132 U. S. 518, the court said:

* * * The relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or, in other words, " not only what shall be done, but how it shall be done."

The rule was stated in *Kinsman* v. *Hartford Courant Co.*, 94 Conn. 156; 108 Atl. 562, as follows:

One is an employee of another when he renders service for him and what he agrees to do or is directed to do is subject to the will of that other in the mode and manner in which the service is to be done and in the means to be employed in its accomplishment as well as in the result to be attained.

If one carries on work for another, and in the mode, manner and means is independent of that other's control, he is an independent contractor.

Cf. *Railroad Co.* v. *Hanning*, 15 Wall. 649; *Standard Oil Co.* v. *Anderson*, 212 U. S. 215; *Chicago, etc. Ry. Co.* v. *Bond*, 240 U. S. 449; *Katherine Linstead* v. *Chesapeake & Ohio Ry. Co.*, 276 U. S. 28; *Metcalf & Eddy* v. *Mitchell, supra.*

The duties of the petitioner herein were not expressly prescribed by contract, and the record does not disclose in definite terms the degree of control or right of control which the Attorney General of Pennsylvania might properly have exercised over the petitioner in connection with the manner in which his service was to be performed and the means to be employed in its accomplishment. On this point, our conclusions must be drawn from all the facts before us.

At the time of his employment in 1920, the petitioner was an outstanding member of the Pennsylvania Bar, and the eminence attained by him in his profession was doubtless the moving cause for his employment by the Attorney General to represent the Commonwealth in this important litigation. The petitioner was a member of the law firm of Reed, Smith, Shaw & Beal, and resided at and had his

office in the City of Pittsburgh. He was not required under his employment to go to Harrisburg and perform his services at a desk in the Attorney General's office under the direct supervision of that official, nor was he in any manner restricted with respect to his employment by other clients. He was at liberty to accept such other employment as he saw fit, and he did in fact during that time represent many other clients. The compensation received by the petitioner from the Commonwealth of Pennsylvania in 1921 was only a small fraction of the income received by him in that year from the practice of his profession. He was not restricted with respect to office hours. He was free to perform his service for the commonwealth at such times and in such manner as he desired, subject only to the general direction of the Attorney General. These facts do not indicate the attributes of an " employee " within the generally accepted meaning of that term.

While it is true that the petitioner was in frequent communication with the Attorney General by letter, orally and by telephone in regard to the several cases, and that no important questions of policy were decided without his previous consultation with and authority from the Attorney General, this, we do not think, constituted that detailed control which an employer commonly exercises over the service of an employee.

So far as disclosed, the relationship between the petitioner and the Attorney General of Pennsylvania, with respect to the manner in which the petitioner's service was to be performed, was not substantially different from the relationship which ordinarily exists between attorney and client.

In *Louisville, etc. Railroad Co.* v. *Wilson*, 138 U. S. 501, the Supreme Court of the United States said:

The terms " officers " and " employees " both, alike, refer to those in regular and continual service. Within the ordinary acceptation of the terms, one who is engaged to render service in a particular transaction is neither an officer or employe. They imply continuity of service, and exclude those employed for a special and single transaction. An attorney of an individual, retained for a single suit, is not his employe. It is true, he has engaged to render services; but his engagement is rather that of a contractor than that of an employe.

See also *Robert G. Gordon*, 5 B. T. A. 1047; *S. P. Freeling*, 7 B. T. A. 1238; *George W. Fuller*, 9 B. T. A. 708.

In the case of *Metcalf & Eddy* v. *Mitchell, supra*, the question was presented whether the plaintiffs were employees or independent contractors in their relation to State governments. The plaintiffs were consulting engineers, who, either individually or as copartners, were professionally employed to advise States or subdivisions of States with reference to proposed water supply and sewage disposal systems.

It was claimed that the fees received by them for such services were expressly exempt from the Federal income tax by the Revenue Act of 1917, and it was further contended that in any event Congress had no power under the Constitution to tax said income. The specific question first considered by the court was whether the plaintiffs were officers or employees of a State or a subdivision of a State, or independent contractors. After pointing out in its opinion that there was no public office to which either of the plaintiffs was appointed, the court continued:

Nor do the facts stated in the bill of exceptions establish that the plaintiffs were "employees" within the meaning of the statute. So far as appears, they were in the position of independent contractors. The record does not reveal to what extent, if at all, their services were subject to the direction or control of the public boards or officers engaging them. In each instance the performance of their contract involved the use of judgment and discretion on their part and they were required to use their best professional skill to bring about the desired result. This permitted to them liberty of action which excludes the idea of that control or right of control by the employer which characterizes the relation of employer and employee and differentiates the employee or servant from the independent contractor.

In the case at bar it seems to us obvious that the petitioner was employed by the Attorney General of Pennsylvania primarily in order that the Commonwealth might have the benefit of the petitioner's knowledge, experience and skill in the conduct of litigation which, from the standpoint of the Commonwealth, was of paramount and far-reaching importance. In these circumstances, the performance of the petitioner's service required the use of judgment and discretion on his part, and involved the exercise of his best professional skill to bring about the desired result. As stated by the Supreme Court in its opinion above quoted, this permitted to him liberty of action which excludes the idea of that control or right of control which characterizes the relation of employer and employee. It is our opinion, therefore, that the petitioner was not an employee of the Commonwealth of Pennsylvania, but that he was in the position of an independent contractor.

This brings us to a consideration of the second contention of the petitioner, namely, that the compensation paid to him by the Commonwealth of Pennsylvania is not taxable by the Federal government for the reason that the petitioner was, in any event, an instrumentality or agency through which said Commonwealth exercised an essential governmental function. As hereinabove pointed out, the solution of this question is dependent upon the effect of the tax. *Railroad Co.* v. *Peniston, supra.*

The tax upon the petitioner's compensation from the State was in no material respect different from the tax upon his compensation from other sources. The State was simply one of his clients. He

was engaged in the particular matters. The United States Supreme Court in the case of *Metcalf & Eddy* v. *Mitchell, supra,* had the same question before it, and said:

* * * The tax is imposed on the income of one who is neither an officer nor an employee of government and whose only relation to it is that of contract, under which there is an obligation to furnish service, for practical purposes not unlike a contract to sell and deliver a commodity.

The court in that case also said:

The tax is imposed without discrimination upon income whether derived from services rendered to the state or services rendered to private individuals. In such a situation it cannot be said that the tax is imposed upon an agency of government in any technical sense, and the tax itself cannot be deemed to be an interference with government, or an impairment of the efficiency of its agencies in any substantial way.

In conclusion, the court in the case of *Metcalf & Eddy* v. *Mitchell, supra,* said:

But we do decide that one who is not an officer or employee of a state, does not establish exemption from federal income tax merely by showing that his income was received as compensation for services rendered under a contract with a state; and when we take the next step necessary to a complete disposition of the question, and inquire into the effect of a particular tax, on the functioning of the state government, we do not find that it impairs in any substantial manner the ability of plaintiffs in error to discharge their obligations to the state or the ability of a state or its subdivisions to procure the services of private individuals to aid them in their undertakings. Cf. *Central Pacific Railroad* v. *California,* 162 U. S. 91, 126. We therefore conclude that the tax * * * was properly assessed.

For the reasons indicated the respondent on the first issue is sustained.

The second issue raised in this proceeding involves the correctness of the deficiency asserted for the year 1922. In that year, the petitioner was a candidate for the office of United States Senator from the Commonwealth of Pennsylvania, and had the support and assistance of the Republican State Committee of Pennsylvania and the Republican Committee of Allegheny County. These committees were engaged in promoting the success of the Republican State ticket and the Republican ticket for Allegheny County, respectively, including the candidacy of the petitioner. During 1922, the petitioner paid into the funds of the Republican State Committee the sum of $5,000, and into the funds of the county committee the sum of $250, which amounts were reported by him to the State authorities and to the United States Senate as campaign expenditures. In his return for 1922 the petitioner deducted said amounts from his gross income as business expenses, and upon audit of the return they were disallowed by the respondent.

The Revenue Act of 1921, in section 214 (a) provides that in computing net income in the case of individuals, there shall be allowed as

deductions " all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business," and in section 215 (a) provides that no deduction shall in any case be allowed in respect of " personal, living or family expenses."

The deductions authorized by the statute, above quoted, plainly contemplate necessary items of expense in conducting business, that is, growing out of or incurred solely in the furtherance of the business engaged in. *Frank H. Sullivan*, 1 B. T. A. 93.

The word " business " is a comprehensive term, and is defined in 1 Bouvier's Law Dict., p. 273, as " that which occupies the time, attention and labor of men for the purpose of a livelihood or profit." This definition was given judicial sanction by the Supreme Court in *Flint* v. *Stone Tracy Co.*, 220 U. S. 107, and again was cited with approval by the Supreme Court in the later case of *Von Baumbach* v. *Sargent Land Co.*, 242 U. S. 503.

So far as we are advised by the record, the activities of the petitioner during the year 1922 were confined to his law business and to his campaign for election to the office of United States Senator. The expenditures in question had no connection with the petitioner's law practice, and can not be considered as expense paid or incurred in carrying on that business.

The statute authorizes only the deduction of ordinary and necessary expenses paid or incurred during the taxable year in the actual carrying on of a trade or business.

Can it be said, then, that running for office or conducting a campaign for public office constitutes a business within the definition of that term as hereinabove given? We think not. Running for office of and within itself is not a business carried on for the purpose of a livelihood or profit, but is only preparatory to the actual deriving of income from a subsequent holding of the office, if elected.

In *J. H. Sanford*, 2 B. T. A. 181, we pointed out that expenditures made preparatory to actual operations for profit were not at all the same as current annual operating expenses, and held that such expenditures were not deductible under the statute as business expenses.

Again, in the case of *Mort L. Bixler*, 5 B. T. A. 1181, we held that amounts expended by the taxpayer in seeking or securing employment were not deductible as business expenses under the same statute which is controlling here.

Even if we should hold that running for office constituted a business, the ordinary and necessary expenses in connection with which are deductible, we are of the opinion that the contributions here involved were not expenditures which should be so classified. The expenditures here involved were merely voluntary contributions. Any benefits flowing or expected to be derived therefrom were indirect and remote.

It may also be noted that the amounts involved were paid by the petitioner into the funds of the State and county committees for the purpose of assisting said committees in their work of promoting the success of the candidates on the State and county Republican tickets, including the petitioner. Obviously, therefore, these amounts were not expended by the petitioner solely in the furtherance of his own candidacy. Amounts gratuitously paid by him to promote the success of other candidates certainly could not in any sense be said to constitute ordinary and necessary expenses in carrying on a trade or business, and accordingly are not deductible from gross income as a business expense.

The action of the respondent on the second issue is affirmed.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

GREEN, MILLIKEN, VAN FOSSAN, and SIEFKIN dissent on the first point.