EDWARD E. HAVERSTICK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9882. Promulgated October 9, 1928.

*Andrew J. Haverstick*, *Esq.*, for the petitioner.
*A. S. Lisenby*, *Esq.*, for the respondent.

SIEFKIN: This is a proceeding for the redetermination of deficiencies in income taxes for the calendar years 1920 and 1921 in the amounts of $535.75 and $197.48. Three issues are raised: (1) That the amounts of $3,358.72 and $3,328.72 received by the petitioner in 1920 and 1921, respectively, were not rent, as determined by the respondent, but payments made on the purchase of property; (2) that the respondent was in error in computing a profit of $1,320.30

on the sale of certain real estate in 1920; and (3) that the petitioner is entitled to a larger deduction for depreciation on buildings in both years than allowed by the respondent.

(1) In 1917 the petitioner was the owner of a vacant lot with 100 feet frontage on South Kingshighway, St. Louis. Representatives of the Mancha Storage Battery Locomotive Co. came to the petitioner in May, 1917, to purchase the lot provided the petitioner would furnish the money to erect a building for their use. They offered to execute a contract to pay the cost of the building back over a five-year period and purchase the lot at the end of that time at a specified amount. The petitioner consulted with his brother, a practicing attorney of St. Louis, who advised him that, since he knew the prospective purchasers were not strong financially, the practical method of insuring the right to regain the premises in case the payments were not kept up would be to establish the contractual relationship of landlord and tenant. Accordingly, a lease was entered into between the petitioner and the Mancha Storage Battery Locomotive Co. by which the petitioner leased the property—

* * * For a term of five years commencing on the day the property hereinbelow described is turned over to the party of the second part, after the completion of the building hereinbelow provided for * * * at a yearly rental of $1,440, payable monthly in advance, in installments of $120 each on the first day of each month of said term.

The lease further provided for the erection of a specified building by the petitioner and gave the lessee the option of renewing for a further five-year period and also provided:

Said Lessee is hereby given option of buying above described property, together with improvements thereon, for a cash sum of $12,500 at the time of the expiration of this lease, provided Lessee shall notify Lessor, in writing, of its intention to or not to exercise its optional rights 60 days before the date of the expiration of this lease.

The building was built and the lessee entered into possession in 1917. The following year the lessee wanted an additional building. The petitioner agreed and a " supplementary lease " was made May 23, 1918, by which the amount payable per month was raised to $170. In 1919 another addition was built by the petitioner and a " second supplementary lease " was executed by which the monthly payment was raised to $260. In 1920 another addition was built and a new lease was executed on July 1, 1920, providing for monthly payments of $395. By the " supplementary lease " the option price was raised to $13,500, which amount was unchanged by the " second supplementary lease " and the lease of July 1, 1920.

During 1920 the petitioner received $3,358.72 as payments under the above instruments and in 1921 received $3,328.72. He did not include the amounts as income in his income-tax returns for those

years. The respondent added the amounts to income. We are satisfied that the respondent's action was proper. During 1920 and 1921 the petitioner had the sole and exclusive ownership of the property subject only to the terms of the leases and the right of the lessee to exercise an option to purchase. Until the option was exercised, the payments made were rent and when it was exercised, as it was at some later date, it did not operate to convert prior rental payments into payments for the property. That the amounts fixed as monthly payment may have been larger than would otherwise have been collected as rent, may be true, but in the absence of an allocation made in the instruments between rent and payments, and where the payments created no equity for the lessee under the terms of the instruments, we must hold that the respondent correctly added the amounts received to the petitioner's income.

(2) On March 3, 1915, the petitioner traded a nine-room brick residence on Catalpa Street, St. Louis, for a property at Second and Douglas Streets, St. Louis, paying $750 cash in addition. The Catalpa Street property had been in the petitioner's possession since before March 1, 1913, and was encumbered by a mortgage of $3,200. The value of the Catalpa Street property on March 1, 1913, and March 3, 1915, was $6,500. The property at Second and Douglas Streets was encumbered by a deed of trust for $1,500. In 1920 the petitioner sold his equity in the property at Second and Douglas for a net amount of $4,412.30.

We are unable to find, from the record, the amount of profit computed by either the respondent or the petitioner upon the sale in 1920. Even if we had that information we would not be able to say which is correct without evidence as to the adjustments for depreciation between the date of acquisition and sale. Respondent's counsel did, however, concede at the hearing, that his computation did not make any allowance for the cash of $750 paid in 1915. With that adjustment the respondent's computation will be approved.

(3) The parties have stipulated that the petitioner is entitled to further deductions for depreciation of $129.47 for 1920, and $104.15 for 1921 above those allowed by respondent.

*Judgment will be entered under Rule 50.*