JAMES M. BUTLER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 34730.   Promulgated April 25, 1930.

*Claude J. Bartlett*, *Esq.*, for the petitioner.
*Elden McFarland*, *Esq.*, and *Arthur Clark*, *Esq.*, for the respondent.

720

OPINION.

McMahon: At the hearing of this proceeding the petitioner specifically waived his assignments of error as to the year 1924. Judgment will therefore be entered for the respondent as to that year. Petitioner likewise specifically waived his assignment of error relating to depreciation as to the year 1923 on property at 51–53 North Front Street. The petitioner failed to adduce proof as to the first assignment of error as to 1923 and the third assignment of error as to the year 1925. No mention of those assignments of error was made in petitioner's brief and we assume that petitioner has abandoned these contentions. The questions raised in such waived and abandoned assignments of error will be resolved in favor of the respondent.

In 1923 petitioner purchased in fee real estate known as 45 South Grant Avenue, Columbus, Ohio, at a total cost of $14,500. He paid $4,600 in cash and assumed a first mortgage of $5,000 and a second mortgage of $4,900. Petitioner paid off the second mortgage in full and also paid off $124.37 of the first mortgage. On October 1, 1923, the petitioner entered into an agreement with O. W. Lintner and W. E. MacDonald, agreeing to lease the property to those parties for 99 years, the lease to be renewable forever in subsequent terms of 99 years at a rental of $1,000 per year. The lease contained an option to purchase the property at any time after June 1, 1953, for $20,000. By the terms of the lease the lessees were to assume the unpaid balance of $4,875.63 on the first mortgage. At the time the lease was executed the lessees paid petitioner $1,000 in cash and also reimbursed petitioner for his payment on the first mortgage in the amount of $124.37.

The respondent increased petitioner's reported gross income for the year 1923 by the amount of $6,000, representing the $1,124.37 cash paid to petitioner, and the unpaid balance of $4,875.63 on the first mortgage which the lessees agreed to pay.

The petitioner contends that the cash payment of $1,124.37 was not income to petitioner, that it was a return, in part, of the peti-

tioner's capital investment in the property, and that no income was derived by petitioner until he received the full amount of his original capital investment, or until the lease was forfeited in 1929. The petitioner also contends that the assumption of the mortgage by the lessees did not operate to increase petitioner's income, since this did not relieve the petitioner from liability on the mortgage. It is the view of the petitioner that even the payments later made by the lessees upon the mortgage are not income to petitioner, but simply operate to reduce the petitioner's capital investment.

The respondent contends that the lease for 99 years, renewable forever, is to be considered as any other lease and that the sums received by the petitioner are rental for the use of the capital asset of the petitioner and are properly includable in petitioner's gross income for 1923. Respondent contends that, even if the assumption of the mortgage by the lessees did not give rise to income to the petitioner, the sums actually paid by the lessees thereunder are income to the petitioner at the time paid. These payments, including principal and interest, amounted to $633.02 in 1923, $583 in 1924, and $689 in 1925.

*Ralston Steel Car Co.* v. *Ralston*, 112 Ohio State 306; 147 N. E. 513, is cited by petitioner in support of his position that the execution of an Ohio 99-year lease on property, renewable forever, is the equivalent of the transfer of the property in fee simple. In that case the Supreme Court of Ohio had before it the question of whether the lessee under a 99-year lease, renewable forever, similar to those involved in this proceeding, was possessed of a freehold estate in real property such as is subject to the laws of descent as an estate in fee. The court, in its opinion, stated:

\* \* \* It is provided by section 8597, General Code:

" Permanent leasehold estates, renewable forever, shall be subject to the same law of descent as estates in fee are subject to by provisions of this chapter."

This statute is *in pari materia* and leaves no doubt that a permanent leasehold is an estate of inheritance. \* \* \*

\* \* \* \* \* \* \*

\* \* \* It is therefore not easy to see how the tenure under such an instrument differs from the tenure of a similar instrument which extends merely to the grantee, his heirs and assigns forever. The one is neither more nor less permanent than the other. The mention of successive terms of 99 years each, renewable forever, such renewals to become effective without any affirmative action on the part of the grantee, does not limit the perpetuity of the tenure, provided the conditions as to payment of rent and other covenants are faithfully observed. Some permanent leases are drawn in one form and some in the other. Any effort to show that a permanent lease to the grantee, his heirs and assigns forever, is a more permanent tenure than an instrument which mentions successive terms of 99 years, forever, must be upon refinements of reasoning which do not tend to promote substantial justice.

If the foregoing reasoning is sound, the case of *Stephenson* v. *Haines*, 16 Ohio St. 478, becomes a valuable aid in determining the issues of this controversy. That case involved a permanent leasehold * * *.

* * * In discussing th's instrument, Welch, J., at page 486, observed:

"* * * In other words, the transaction was equivalent to a sale and conveyance, with a mortgage to secure the payment of the purchase money."

In *Weiss* v. *Wiener*, 279 U.' S. 333, the Supreme Court had under consideration a question involving the right of a lessee under Ohio 99-year leases, renewable forever, to deductions for depreciation on buildings erected on the land before the execution of the leases. The court, in denying lessee's right to such deductions, stated:

> It does not matter that in Ohio, where the properties lie, these long leases are treated as in many respects like conveyances of the fee. The Act of Congress has its own criteria, irrespective of local law, that look to certain rather severe tests of liability and exemption and that do not allow the deductions demanded whatever the lessees may be called. We understand this to be the view taken by the Department for a long time and we are of opinion that it should not be disturbed. (Italics supplied.)

See *Rosenberger* v. *McCaughan*, 25 Fed. (2d) 699, in which certiorari was denied, 278 U. S. 604.

It seems clear to us that the opinion of the United States Supreme Court is that a lessee under a 99-year lease, renewable forever, does not, by virtue of the execution of the lease, acquire any ownership of the property which is the subject of the lease, despite the fact that such leases are treated locally as in many respects like conveyances of the fee. In the instant proceeding the lease, which by its terms provides for the exercise of an option to purchase the property and does not bind the lessee to renew at the end of the term, negatives the theory of a conveyance of the fee at the time the lease was executed.

It is therefore our opinion that the instrument in question is no more than a lease and that the question as to whether amounts paid by the lessee under its terms and in consideration of its execution constitute income to the lessor is governed by the law applicable to other leases.

In *Edward E. Haverstick*, 13 B. T. A. 837, we held that amounts paid to a lessor under a lease containing an option to purchase were income to the lessor. In *O'Day Investment Co.*, 13 B. T. A. 1230, we held that bonus money and rents paid under a 15-year renewable lease were income in the years in which they were paid.

The petitioner in the instant proceeding operated under the cash receipts and disbursements basis, and the amount of $1,124.37 which he received at the time this lease was executed was income to him at the time received. However, the assumption, by the lessees, of an

obligation to pay the remainder of $4,875.63 can not be considered income to the petitioner at the time of assumption. The petitioner was still liable under the mortgage and his liability was reduced only as payments were made on the principal of the mortgage by the lessees. But as such payments were made they did reduce petitioner's liability to the same extent and were income to petitioner when paid. In 1923 the lessees paid a total of $289.13 as principal accruing under the mortgage, and this will be included in petitioner's income for that year.

The lessees also paid upon this same mortgage $583 in 1924 and $689 in 1925. The respondent, in his brief, urges that these amounts should be included in income for those years. While it is true that we have before us the years 1924 and 1925, none of the petitioner's allegations of error with regard to the respondent's determinations of the deficiencies for those years go to the question of the income derived from this particular transaction, and the respondent has not affirmatively pleaded in this respect. In this situation we are precluded from including these amounts in petitioner's income for those two years. Sec. 274 (e), Revenue Act of 1926. See *D. N. & E. Walter & Co. et al.*, 10 B. T. A. 620; *H. D. & J. K. Croswell, Inc.*, 6 B. T. A. 1315; and *E. O. Fippin*, 2 B. T. A. 350.

The petitioner as lessor paid a real estate broker's commission of $980 for the securing of the above discussed lease.

The petitioner, in his return for 1923, claimed as a deduction an amount of $1,945.36 as expenses incident to two real estate transactions in 1923. Of this amount, $1,009.44 was claimed as expense incident to the leasing of the property at 45 South Grant Avenue. This amount includes the real estate broker's commission of $980 paid by petitioner for securing the lease which we have discussed above. The respondent disallowed the claimed deduction of $1,945.36, holding that it constituted a capital expenditure, but allowed a deduction in the amount of $19.65 representing commissions of $1,945.36 prorated over a period of 99 years. Petitioner contends that the brokerage fee of $980 was an ordinary and necessary expense of his business of dealing in real estate and is, therefore, deductible from income of 1923.

The petitioner relies upon *Robert H. McNeill*, 16 B. T. A. 479, in which we held that the cost, to the lessor, of securing a lease is deductible from the gross income of the lessor in the year in which the expenditure is made. However the principle laid down in *Robert H. McNeill, supra*, has been overruled in two recent Board decisions. *Bonwit Teller & Co.*, 17 B. T. A. 1019, and *Julia Stow Lovejoy*, 18 B. T. A. 1179.

In the instant proceeding the $980 which petitioner expended to secure the lease was not an ordinary and necessary business expense The expenditure in question resulted in the securing of an asset from which income was to be derived for 99 years. Such an expenditure is, beyond a doubt, of a capital nature and may be allowed as a deduction only as the benefit is realized. The respondent has allowed petitioner a deduction from income of 1923 calculated in accordance with our decision and upon the basis of a larger expenditure than petitioner has here shown. In this circumstance the holding of the respondent will be approved.

On May 15, 1922, Thomas J. Dundon and Ella Dundon executed in favor of Peter A. Fitzpatrick two 99-year leases, renewable forever, in terms of 99 years, covering property in Columbus, Ohio, described as " Lots 12, 1, 2 and 3 in Heffner and Hayden's Addition," and also a strip of land lying on the north side of " Lots 1, 2 and 3 of Heffner and Hayden's Addition." Each of these leases contained an option to purchase. All of the property covered by the two leases to the petitioner is known generally as the Spring and Water Street property.

On February 5, 1925, Peter A. Fitzpatrick transferred to the petitioner all his interest in these leases. Under the contracts the purchase price of these leases to the petitioner was $37,500, but petitioner was also required to pay some accrued rents, bringing the total cost to the petitioner of the properties at the time he received them to $38,516.25. On November 9, 1925, the petitioner entered into an agreement with the Civic Center Realty Co. leasing the Spring and Water Street properties to that company. This lease was for 99 years, renewable forever, in terms of 99 years, and contained an option to purchase the property covered by the lease.

At the time the above lease was executed to the Civic Center Realty Co. petitioner was paid $5,000 in cash and two promissory notes for $5,000 each. These notes bore interest and petitioner discounted them at the bank without any loss to him. The respondent included in the income of the petitioner for 1925 the amount of $15,000. The petitioner contends that the amount of $15,000 was not income but was a return of capital.

As pointed out hereinbefore, the lessee under a 99-year lease renewable forever, does not receive title to the property covered by the lease. Here, the petitioner became the lessee of the Spring and Water Street property and thereafter subleased the same. Any amount which he received under such sublease was income to him when received. *Edward E. Haverstick*, *supra*, and *O'Day Invest-*

*ment Co., supra.* We see no error in the respondent's determination that the amount of $15,000 received by the petitioner from the Civic Center Realty Co. was income to the petitioner.

The respondent also included in the income of the petitioner for the year 1925 the amount of $6,000, representing the broker's fee paid to Marcus Burnstine, the broker who negotiated the deal whereby petitioner leased the Spring and Water Street property to the Civic Center Realty Co. It is true that the lease itself recites that one of the considerations for the execution of the lease was to be the payment by the Civic Center Realty Co. of the fee of $6,000 to Marcus Burnstine. Likewise, it is alleged in the petition and admitted in the answer that it was a part of the consideration. However, the petitioner testified that he did not employ Burnstine, but that Burnstine came to him as the representative of Levy and Kobacker and bargained for the lease. All the parties concerned with the lease agreed that the liability for the broker's fee was not upon petitioner and that the payment of such fee by the Civic Center Realty Co. was not a consideration for the execution of the lease. We, therefore, hold that this amount of $6,000 was not income to petitioner in the year 1925.

The petitioner, on November 6, 1925, received a check in the amount of $15,000 from the executor of the estate of Helen C. Pacelli, for services as attorney for the estate. The executor informed petitioner that certain tax matters of the estate had not been settled and that petitioner might have to pay back a part of this amount. Petitioner held the check until January 2, 1926, at which time the executor finally informed him that there was no possibility of petitioner's having to repay any part of the fee. Petitioner then cashed the check and reported the $15,000 as income in 1926. The respondent held that this amount was income to petitioner in 1925. Respondent contends that the check received by petitioner in 1925 had a value equal to its face value, or that petitioner constructively received $15,000 in money in 1925, and that under either theory the petitioner's reported income for 1925 should be increased by the amount of $15,000. Petitioner contends that since he kept his books upon the cash receipts and disbursements basis, and since the drawer or maker imposed a condition upon the cashing of the check, the amount of such check was not income to him until such amount was actually paid to him in money.

We do not agree with the contention of the petitioner. The petitioner did receive and retain the check and he was not required to refrain from cashing it. In fact, the executor of the estate, who drew the check, considered the amount as paid in 1925 and reported

it as a disbursement in that year. There is no showing that there was not sufficient money of the estate in the bank to cover the amount of the check and we see no reason for reversing the respondent's holding that the amount of $15,000 was income to petitioner in 1925. *Harry B. Hurd et al.*, 12 B. T. A. 368; *I. M. Cowell et al.*, 18 B. T. A. 997. See *Ella C. Loose, Executrix*, 15 B. T. A. 169.

The respondent included in the gross income of the petitioner for the year 1925, an amount of $7,863 representing compensation paid to petitioner by the city of Columbus, Ohio. At the hearing petitioner conceded that this figure was incorrect, that the true amount which he received from this source was $8,325, and that if any amount is includable in his income as compensation from the city of Columbus, the amount should be $8,325. Petitioner contends, however, that such compensation is exempt from the Federal income tax.

Section 213 of the Revenue Act of 1924 provides in part:

SEC. 213. For the purposes of this title, except as otherwise provided in section 233—

(a) The term "gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, * * * or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever.

Section 1211 of the Revenue Act of 1926 provides:

Any taxes imposed by the Revenue Act of 1924 or prior revenue Acts upon any individual in respect of amounts received by him as compensation for personal services as an officer or employee of any State or political subdivision thereof * * * shall, subject to the statutory period of limitations properly applicable thereto, be abated, credited, or refunded.

We think it clear that petitioner was not an officer of the city of Columbus, Ohio. The income of petitioner was received under a contract with the city. The petitioner as special attorney rendered professional services in the gas litigation in which the city was involved. It is true an ordinance was passed authorizing the employment of the petitioner, but such ordinance clearly did not create an office of special attorney. It was simply an emergency measure passed for the purpose of allowing the city attorney to employ a specified person for the sole purpose of assisting in the gas litigation. Under the contract petitioner was to be paid for the actual number of days he worked based upon an 8-hour day and he was free to accept other employment. Petitioner was not required to take an oath of office. Nor do we believe petitioner was an employee of the city of Columbus. His position, in our view, was more like

that of an independent contractor than of an employee. Under the contract petitioner was not required to do any of the general work of the city attorney's office. His duties were confined to the gas litigation. Furthermore, while petitioner was to some extent under the direction of the city attorney, yet this direction consisted in defining policies and indicating the end desired to be accomplished. The examination of witnesses and the preparation of briefs, in so far as they were entrusted to him, were left to the discretion of petitioner, and petitioner used his private office force to some extent in the work he did for the city. No attempt was made to interfere with petitioner's handling of any of the details. Petitioner was not limited to particular hours. It appears that petitioner is still acting under the same contract and that he is now in almost complete charge of the gas litigation. He is the only attorney who sat through the gas litigation who is available to present the city's argument to the United States Circuit Court of Appeals. In our view the imposition of the tax in question does not impair " in any substantial manner " the obligation of the petitioner to the city of Columbus or the ability of the city to procure services of this character. We see no reason for disturbing the determination of the respondent whereby he included in petitioner's gross income for 1925 the compensation received by the petitioner from the city of Columbus. We consider that these conclusions are sustained and that this proceeding, in so far as it involves that compensation, is ruled by the following cases: *Metcalf & Eddy* v. *Mitchell*, 269 U. S. 514; *W. J. Howard*, 10 B. T. A. 62; affd. 280 U. S. 14A; *David A. Reed*, 13 B. T. A. 513; 34 Fed. (2d) 263; 281 U. S. 699; *Robert J. Cummins*, 19 B. T. A. 498; and *Clarence H. Johnston*, 14 B. T. A. 605.

We are satisfied that petitioner has not overcome the presumption which prevails in favor of the correctness of the decision of the respondent on this issue by proving all of the elements that are necessary to establish that the petitioner was either an officer or an employee of the city of Columbus, Ohio, under his agreement, as performed, to render special professional services to the city. We, therefore, hold that the amount of $8,325 received by petitioner in 1925 was taxable income.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*