WILLIAM FLEMING, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

MRS. WILLIAM FLEMING, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket Nos. 61042, 61043, 65676, 65677. Promulgated November 16, 1934.

*George S. Atkinson, Esq.*, for the petitioners.
*John D. Kiley, Esq.*, and *F. B. Schlosser, Esq.*, for the respondent.

OPINION.

ADAMS: These consolidated cases involve deficiencies for the following years and amounts:

| Petitioner | Docket No. | Year | Deficiency determined |
|---|---|---|---|
| William Fleming | 61042 | 1928 | $3,996.50 |
| Mrs. William Fleming | 61043 | 1928 | 3,439.13 |
| William Fleming | 65676 | 1929 | 833.78 |
| Mrs. William Fleming | 65677 | 1929 | 817.89 |

The facts were stipulated and are incorporated herein by reference. In addition, the individual returns of each of the petitioners for the taxable years were introduced in evidence.

The petitioners in their original petitions alleged that the respondent had erroneously failed to allow certain losses which they claimed to have sustained on sales of real estate, an oil royalty, and a block of bank stock. These losses amounted to about $33,000 for 1928 and to $3,557.40 for 1929. At the hearing, however, petitioners waived their claims for these losses and filed a supplemental petition alleging an entirely new cause of complaint, which was that the respondent had failed to make a deduction for depletion on oil bonuses and payments made from oil runs. It was further claimed that because of this omission the petitioners had overpaid their taxes and were entitled to refunds as follows: William Fleming, 1928, $4,386.18; 1929, $2,243.32; Mrs. William Fleming, 1928, $4,907.98; 1929, $2,259.21.

The petitioners are husband and wife and reside in the State of Texas, where community property laws prevail. They made indi-

vidual returns, dividing the community income equally between them, but made no claims for the alleged depletion as such, and no allowance was made as depletion.

Briefly stated, the facts as to the claim of depletion are these. In 1928 petitioner William Fleming, the F. H. E. Oil Co., and Kay Kimbell sold to Naphen & Co. certain interests held by them in oil and gas leases in Howard County, Texas, known as Roberts "B", "D", and "E" leases, for part cash and the balance to be paid out of oil, if, as, and when produced. In the year 1928 petitioners received $250,000 cash and from payments made from oil they received $2,471.05, being a total of $252,471.05 received in 1928. The petitioners' investment in the Roberts B, D, and E leases at the date of transfer in 1928, after adjustment for depletion and depreciation sustained to date of sale, was $57,939.66.

In 1929 they received in oil payments from the Roberts B, D, and E leases the sum of $70,593.22; $1,425.48 in other oil income; and $896.81 from fuel oil and gas sold, or a total payment from such sources of $72,915.51.

In 1929 petitioner William Fleming, the F. H. E. Oil Co., and Kay Kimbell sold to the California Co. their interests in an oil and gas lease known as the Roberts "A" lease for part cash and the balance to be paid from oil runs, if, as, and when produced. The petitioners in 1929 received $43,750 cash and $9,578.17 from oil runs, or a total of $53,328.17 from both sources from the Roberts A lease. The petitioners' investment at the date of transfer of the Roberts A lease, adjusted for depletion and depreciation sustained to date of sale, was $11,254.90.

The petitioners in their individual income tax returns for the calendar year 1928 reported an amount of cash and oil payments received in 1928 from the Roberts B, D, and E leases totaling $252,471.05, and took as a deduction therefrom their computation of the remaining cost at date of sale in the amount of $58,161.61, thereby reporting a community profit from the transaction of $194,309.37. No depletion was claimed by the petitioners on the returns for the year 1928 on any part of the $252,471.05. The respondent did not allow the petitioners or either of them any depletion deduction on any part of the item of $250,000 cash received in 1928 or the item of $2,471.05 paid out of oil produced in that year.

In their individual income tax returns for the year 1929 petitioners reported the amount of $72,915.51, made up of $70,593.22 from oil runs, $1,425.48 from other oil income, and $896.81 from fuel oil and gas sold as set out above. Neither of the petitioners in their separate returns deducted any amount for depletion with respect to such income and the respondent did not allow any depletion deduction with respect thereto.

The petitioners also reported in their income tax return for the year 1929 the amount of the gas and oil payments received in that year from the Roberts A lease referred to above, namely, $43,750 cash and $9,578.17 from oil runs, totaling $53,328.17, and took as a deduction the computation of the remaining investment at date of sale in the amount of $11,786.39, thereby reporting a community profit from the transaction of $41,541.78. No depletion was claimed by the petitioners on any part of the $53,328.17. The respondent did not allow any depletion deduction on any part of the items of $43,750 and $9,578.17 reported by petitioners.

It is now contended by the petitioners that under the cases of *Murphy Oil Co.* v. *Burnet*, 287 U. S. 299, and *Palmer* v. *Bender*, 287 U. S. 551, they are entitled to depletion on both the cash payments and the payments received from oil runs. They contend in the alternative that they are entitled to depletion on the cash payments and oil runs reduced by their remaining investment in the property at the date of transfer in the respective years.

The respondent contends that the petitioners effectively disposed of their interest in the oil by sale, and that the payments in cash and those made out of oil are part of the purchase price of the oil and, therefore, not subject to depletion. The allowance claimed by petitioners is that provided for in section 114 (b) (3) of the Revenue Act of 1928, as follows:

(3) PERCENTAGE DEPLETION FOR OIL AND GAS WELLS.—In the case of oil and gas wells the allowance for depletion shall be 27½ per centum of the gross income from the property during the taxable year. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance be less than it would be if computed without reference to this paragraph.

It is true that in the cases above referred to the Court held that taxpayers selling or transferring interests in oil-bearing properties for a cash bonus and retaining an interest in oil in place, which is to be paid to them when extracted, are entitled to depletion for a return of their capital investments. It should be kept in mind, however, that those cases arose under the Revenue Acts of 1918 and 1921, and that under those revenue acts deductions for depletion are allowed for the purpose of permitting a return of the taxpayers' capital investment, *United States* v. *Ludey*, 274 U. S. 295; *Palmer* v. *Bender*, *supra;* *Murphy Oil Co.* v. *Burnet*, *supra*, and are not based on income. The cases cited by petitioners do not support their contention in this proceeding, which differs from those cases as to its facts and, moreover, is controlled by the applicable sections of the Revenue Act of 1928, wherein the basis for depletion is the income received from the property during the taxable year

In *Macon Oil & Gas Co.*, 23 B. T. A. 54, we had the question of whether the profit on the sale of leases is a part of the gross income from the property within the scope of section 204 (c) (2) of the Revenue Act of 1926 (which section is substantially the same as section 114 (b) (3) of the Revenue Act of 1928). We there held that depletion as to oil and gas properties may not be based on the profits received from the sale of the properties. See also *Lester W. Fritz*, 28 B.T.A. 408; *Darby-Lynde Co.* v. *Alexander*, 51 Fed. (2d) 56; certiorari denied, 284 U. S. 666. In the latter case the court held that " gross income " as used in section 204 (c) (2), *supra*, means income derived from the sale or other disposition of oil and gas produced and not income derived from the sale of oil and gas properties. Applying this construction, which we think sound, we hold the cash payments received by petitioners in 1928 and 1929 from the sale of their oil and gas leases are not subject to depletion under section 114 (b) (3) of the Revenue Act of 1928. Such cash receipts must be treated as cash received upon the sale of property and gain or loss determined upon the basis of petitioner's capital investment adjusted for depletion and depreciation sustained to the date of sale.

The respondent's contention would treat the income derived from the sale of oil produced in the taxable years in the same manner as the cash received on the sale of the properties. We do not think such treatment is correct. It is true that, in a certain sense, the amounts received from the sale of the oil produced might be regarded as a part of the sale price, but on examination of the terms of the contract of sale, we think this point of view is not strictly correct. The agreement between the parties with respect to the Roberts B, D, and E leases provides (and the agreement with respect to the Roberts A lease contains substantially the same provision) in part as follows:

It is expressly understood and agreed between the parties hereto that the payment of said One Million Dollars out of said one-fourth of the oil, gas and other minerals, as aforesaid, is not, and never shall be, a personal obligation or liability against the Second Party, its successors, assigns or nominees, but shall be paid only out of the said products, if, as and when produced and sold from said premises. And to secure the payment of any unpaid amounts to become due First Parties from the oil, gas and other minerals produced and sold from said undivided one-fourth interest, the said First Parties shall be entitled to reserve and retain in said instruments of conveyance a lien upon an undivided one-fourth interest of said working interest. All payments from oil to be paid to First Parties by the pipe line company which may run the oil produced from said leases.

It is evident that the income from oil produced in the taxable years was not merely deferred payments of the sale price which the buyers were obligated to pay, but was derived from oil reserved to petitioners and payable to them by the purchasers of the oil if, as, and when produced. Any limitation or exhaustion of the oil prior to

their receiving the quantity reserved would in proportion limit or exhaust their ability to receive the quantity reserved. In this situation we think they had a very real interest in the oil itself and the gross income received by them during the taxable years from the sale of oil must be regarded as subject to depletion under section 114 (b) (3) of the Revenue Act of 1928. *Palmer* v. *Bender, supra; Chester Addison Jones*, 31 B. T. A. 55.

The case of *Comar Oil Co.* v. *Burnet*, 64 Fed. (2d) 965, on which the respondent relies, is distinguishable from the instant case on the facts and questions involved, and is not controlling here. In the *Comar* case, which arose under the Revenue Act of 1921, the question was whether the income from the oil and gas produced, in the amount of the deferred payment, was income to the assignee of the lease. There it appears that the assignee and his assigns were liable for the deferred payments and the assignor had a lien on one-eighth of the oil produced from the property until the amount of deferred consideration was paid. Here the question is whether the assignors or vendor retained an interest in the oil in place which was subject to depletion under the Revenue Act of 1928. We hold that they did.

*Decision will be entered under Rule 50.*