DAVID E. AND BARBARA A. STAHL, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stahl v. Commissioner
Docket No. 16034-85.
United States Tax Court
T.C. Memo 1987-323; 1987 Tax Ct. Memo LEXIS 323; 53 T.C.M. (CCH) 1273; T.C.M. (RIA) 87323; June 29, 1987. *323 Petitioners, in consideration for property, promised to provide a residence to A and B for the rest of A and B's lives. Held, the transaction was a lease with an advance rental payment in the form of property. Held further, petitioners' basis in such property for the purpose of determining gain on subsequent disposition is the fair market value of the property as of the date of acquisition. Held further, fair market value determined. Richard N. Brown, for petitioners. Dale P. Kensinger, for respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies *324 to petitioners' Federal income tax as follows: YEAR
DEFICIENCY
1980
$14,910.55
1981
238.00
After concessions, the sole issue is the determination of basis attributable to a life estate acquired by petitioners. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, resided in Marceline, Missouri, at the time they filed their petition herein. On January 20, 1970, petitioners purchased from petitioner David E. Stahl's parents (the "Stahls"), Joe E. Stahl ("Joe") and Doris L. Stahl ("Doris"), a 168-acre farm and a 140-acre farm for $46,805. In the sale of the 168-acre farm, the Stahls reserved a life estate in a "dwelling house and yard" located on such farm. The fair rental value of the dwelling house and yard is $100 per month. On August 17, 1971, petitioners purchased from unrelated parties a 100-acre farm for $12,000. Petitioners made improvements to the farms, less depreciation, in the net amount of $50,036.37. On November 29, 1979, petitioners agreed to sell their three farms to a third party for $240,000. In order to relieve the 168-acre farm of the Stahls' life estate, petitioners orally *325 promised to provide them with a home and land similar to the dwelling house and yard until their deaths. On or before November 29, 1979, in consideration of petitioners' oral promise, the Stahls permanently relinquished their life estate in the dwelling house and yard. [1]
From the date of the Stahls' permanent relinquishment of their life estate until March of 1980, when petitioners' sale of the farms was closed and possession was transferred to the purchasers, the Stahls continued to live in the dwelling house and yard. Commencing in March of 1980, the Stahls resided in a trailer home, purchased with their own funds, on land provided by petitioners. The Stahls, rather than petitioners, purchased the trailer home because the funds with which the purchase was made were earmarked for petitioner David E. Stahl's inheritance. In August of 1981, Joe died. *326 Doris continued to live in the trailer home on land provided by petitioners up to the time of trial. The trailer home cost approximately $13,000. It was originally titled in the Stahls' names. It was later transferred gratuitously, around the time of Joe's death, August of 1981, to petitioner David E. Stahl and his sister. The cost of the land on which the trailer home sits was $1,490. On petitioners' 1980 Federal income tax return, they reported a long-term capital gain of $85,401 from the sale of the three farms. The amount of the long-term capital gain was determined by subtracting from the $240,000 amount realized, a claimed basis in the three farms in the amount of $154,599. The parties have stipulated that the total basis in the three farms, without regard to petitioners' acquisition of the Stahls' life estate, is $108,841.67. [2]
The parties have stipulated that the present value of a monthly annuity of $100 payable from November 15, 1979, to the later death *327 of Joe or Doris is $14,993.22. OPINION We are asked to determine that portion of the basis in the farms sold by petitioners in 1980 attributable to their acquisition of the Stahls' life estate. Petitioners acquired the life estate by agreeing to provide a residence to the Stahls for the remainder of the Stahls' lives. [3] Though petitioners and the Stahls did not characterize this transaction as a lease, we are of the opinion that the transaction is in form a lease: the Stahls were allowed the use and enjoyment of property owned by petitioners and petitioners received consideration therefor. This lease is somewhat unique in that petitioners received consideration in the form of property rather than money and that the consideration was paid in advance. We do not, however, consider these factors to so alter the transaction as to make it something other than a lease. In C.G. Meaker Co. v. Commissioner,16 T.C. 1348 (1951), and Pembroke v. Helvering,70 F.2d 850 (D.C. Cir. 1934), affg. 23 B.T.A. 1176 (1931), transactions with characteristics similar to the transaction at issue were held to be leases.[4] In Koch v. Commissioner,71 T.C. 54, 70 (1978), *328 this portion of the Pembroke holding was reaffirmed. We hold that the transaction at issue herein is a lease. [5]
*329 Where a taxpayer acquires property in exchange for personal services, the fair market value of the property is the taxpayer's basis in such property. Weaver v. Commissioner,25 T.C. 1067 (1956); sec. 1.61-2(d)(2), Income Tax Regs. We think a like rule should apply to property acquired as consideration for granting a lease. See Greenwood Packing Plant v. Commissioner,131 F.2d 787 (4th Cir. 1942). We hold that property acquired as consideration for granting a lease takes a basis equal to its fair market value as of the date of acquisition. Accordingly, petitioners' basis in the farms attributable to their acquisition of the Stahls' life estate is the fair market value of the life estate as of the date of acquisition. No direct evidence was presented as to the fair market value of the Stahls' life estate in the dwelling house and yard. However, evidence was given as to the fair rental value of the dwelling house and yard, $100 per month. [6] Further, the parties stipulated that the present value of a $100 per month life annuity *330 payable to the Stahls or the survivor of them, as of November 15, 1979, was $14,993.22. Since the Stahls' life estate if not permanently relinquished on November 29, 1979, [7] would have had the same monthly value as and would have terminated at the same time as the above-referenced annuity, we hold that the fair market value of the life estate as of November 29, 1979, equals the present value of such annuity. [8] See United States v. Dresser Industries, Inc.,324 F.2d 56, 59 (5th Cir. 1963). Accordingly, we hold that the fair market value of the life estate as of November 29, 1979, was $14,993.22 and that petitioners' basis in the farms attributable to their acquisition of the Stahls' life estate is $14,993.22. *331 To reflect the foregoing and concessions by the parties, Decision will be entered under Rule 155.
Footnotes
1. The record does not contain the document by which the Stahls permanently relinquished their life estate. However, from petitioners' agreement to sell the three farms, which lists several encumbrances but does not list the Stahls' life estate, we find that the permanent relinquishment occurred on or before November 29, 1979.↩
2. The cost of the 168 acre farm and the 140 acre farm, $46,805, plus the cost of the 100 acre farm, $12,000, plus the cost of improvements to the farms, less depreciation, $50,036.67, equals $108,841.67.↩
3. This transaction does not constitute a gift. The value of the Stahls' life estate in the dwelling house and yard equaled the value of petitioners' promise to provide a residence similar to the dwelling house and yard for the remainder of the Stahls' lives. ↩
4. Even respondent has ruled similarly. See Rev. Rul. 66-209, 1966-2 C.B. 299 (transaction in which transferor of fee interest in property received use and enjoyment of other property owned by transferee is a lease with an advance rental payment in the form of a fee interest in property), and Rev. Rul. 73-549, 1973-2 C.B. 17↩ (transaction in which payor of lump sum amount received right to reside until death in a residence provided by recipient of payment is a lease). 5. This transaction does not qualify for like-kind exchange treatment under section 1031, Internal Revenue Code of 1954, as in effect during the years at issue, because the life estate was acquired for resale, not for productive use in a trade or business or for investment. See Regals Realty Co. v. Commissioner,127 F.2d 931 (2d Cir. 1942), affg. 43 B.T.A. 194 (1940); and Griffin v. Commissioner,49 T.C. 253↩ (1967).
6. Under our analysis of determining the life estate's fair market value, if the fair rental value of the dwelling house and yard would increase subsequent to the years in issue and during the Stahls' life expectancies, the fair market value would likewise increase. Petitioner, however, has not proven that the fair rental value of the dwelling house and yard would increase during such period. Since petitioner has failed to carry his burden of proof, Rule 142(a), Tax Court Rules of Practice and Procedure↩, we hold that the fair rental value of the dwelling house and yard would not increase during the relevant period. 7. As our findings of fact indicate, the Stahls permanently relinquished their life estate on or before November 29, 1979. Under our analysis of determining the life estate's fair market value, the earlier the Stahls relinquished their life estate, the greater petitioners' basis. Petitioners failed to prove the permanent relinquishment occurred before November 29, 1979. For the purposes of this opinion, we hold that the permanent relinquishment occurred on November 29, 1979. Rule 142(a), Tax Court Rules of Practice and Procedure.↩
8. The annuity is valued as of November 15, 1979, and the life estate is to be valued as of November 29, 1979. We consider the two-week difference in these dates to be inconsequential in valuing the life estate.↩