RICHARD WAYNE CROOKS AND MAXINE L. CROOKS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2055-87.      Filed April 17, 1989.

*William C. Jones,* for the petitioners.
*Michael W. Bitner,* for the respondent.

GOFFE, *Judge:* The Commissioner determined deficiencies in petitioners' Federal income taxes for the following taxable years:

| Taxable year | Deficiency |
| --- | --- |
| 1982 | $733,357.81 |
| 1983 | 3,128.85 |

Petitioners have conceded the Commissioner's adjustments in disallowing, in 1983, utility expenses in the

amount of $1,515.60, gasoline expenses in the amount of $520, and depreciation expense in the amount of $3,222, and have conceded an increase in the investment tax credit for 1983 in the amount of $500.30. There are no issues remaining for our decision for the taxable year 1983. After concessions, the issues remaining for decision are: (1) Whether petitioners retained an economic interest in the minerals underlying the Brown County farm; and, (2) whether the conveyance of the minerals underlying the Brown County farm in consideration for four parcels of real property is a like-kind exchange under section 1031.[1]

## OPINION

This case was submitted fully stipulated under Rule 122. The stipulation of facts and accompanying exhibits are incorporated by this reference.

Petitioners resided in La Prairie, Illinois, at the time of the filing of the petition in this case.

In 1981, oil was discovered in Brown County, Illinois. Petitioners owned, and continue to own, a 160-acre farm located in Brown County. As a result of the discovery of oil, petitioners entered into an agreement on October 15, 1982, with Henry Energy Corp. whereby petitioners agreed to convey all of their mineral rights in the 160-acre farm to Henry Energy Corp. in consideration for four farms located in Adams County, Illinois, and new farm equipment. Upon consummation of this transaction and pursuant to the agreement, Henry Energy Corp. also agreed to convey to petitioners one-fourth of any oil or gas, on and under, and to be produced and saved from the mineral interest underlying the Brown County farm. The four Adams County farms and the new farm equipment described in the agreement had a value, as of October 15, 1982, of $1,676,800 and $235,804.34, respectively.

The conveyance of the minerals was completed by way of a mineral deed dated December 13, 1982. In addition, on December 13, 1982, Henry Energy Corp. conveyed to petitioners by quitclaim deed the four Adams County farms

---

[1]Unless otherwise indicated, all section numbers refer to the Internal Revenue Code in effect for the taxable year 1982, and all rule numbers refer to the Rules of Practice and Procedure of this Court.

and the new farm equipment. On that same date, pursuant to the agreement, Henry Energy Corp. executed a conveyance of the one-fourth royalty interest to petitioners.

On their 1982 joint Federal income tax return, Schedule D, petitioners reported a long-term capital gain (as "mineral ownership in 160 acres") in the amount of $235,804.34, with a taxable gain of $94,322. The former amount represented the value of the items of farm machinery received by petitioners from Henry Energy Corp. pursuant to the October 15, 1982, agreement. Petitioners did not report the receipt of the four Adams County farms nor the royalty from Henry Energy Corp. on their 1982 joint Federal income tax return on the theory that petitioners' receipt of the four Adams County farms was a like-kind exchange for the mineral interest in the 160-acre Brown County farm.

The Commissioner determined that the October 15, 1982, agreement between petitioners and Henry Energy Corp. was a lease, and that the value of the property received by petitioners from Henry Energy Corp. (the four Adams County farms and the new farm equipment) was a lease bonus, taxable to petitioners as ordinary income. The Commissioner increased petitioners' 1982 taxable income in the amount of $1,818,282 (i.e., $1,676,800 + ($235,804 − $94,322)).

The first issue for our decision is the characterization, as ordinary income or capital gain, of the value of the property received by petitioners. This characterization depends upon whether the agreement is a sale or a lease for Federal income tax purposes, which is ultimately determined by whether petitioners retained an economic interest in the minerals underlying the Brown County farm.

When a mineral interest is assigned for a lump-sum cash consideration and the assignor retains a right to receive a specified percentage of all oil and gas produced for the economic life of the mineral deposit, the transaction is a lease and payments received under such lease are ordinary income. *Burnet v. Harmel*, 287 U.S. 103 (1932). The cash or other consideration paid to the lessor upon execution of the lease and before actual production is treated as an advance royalty or bonus and is ordinary income subject to depletion. *Herring v. Commissioner*, 293 U.S. 322, 325 (1934).

However, when a mineral interest is assigned for a cash consideration and no interest is reserved, the transferor has alienated his economic interest therein. In that instance, the cash payment cannot be considered an advance royalty, but rather is consideration for the transferor's assignment of all of his interest. *Commissioner v. Fleming,* 82 F.2d 324 (5th Cir. 1936), affg. 31 B.T.A. 623 (1934); *Day v. Commissioner,* 54 T.C. 1417, 1423 (1970) (relying upon principles of oil and gas taxation); *Glenn v. Commissioner,* 39 T.C. 427, 443 (1962). Thus, the interest retained by the transferor is the primary distinction between a sale and a lease. Whether the instrument creating the interest is a lease, a sublease, or an assignment has not been deemed significant in deciding whether or not the taxpayer had an economic interest in the oil in place. *Palmer v. Bender,* 287 U.S. 551, 557, 558 (1933).

The standard defining the interest retained was set forth in *Palmer v. Bender, supra.* A taxpayer need not have legal title to the property to have an economic interest. "It is enough if, by virtue of the leasing transaction, he has retained a right to share in the oil produced. If so he has an economic interest in the oil, in place, which is depleted by production." *Palmer v. Bender, supra* at 557. Section 1.611-1(b), Income Tax Regs., has codified this economic interest standard.

An economic interest is possessed in every case in which the taxpayer has acquired by investment any interest in mineral in place or standing timber and secures, by any form of legal relationship, income derived from the extraction of the mineral or severance of the timber, to which he must look for a return of his capital.

The parties in the instant case do not dispute that petitioners possessed an interest in the minerals in place. We must, therefore, decide whether petitioners retained an economic interest in the minerals underlying the Brown County farm and, if so, whether they may look to some source other than income derived from extraction of the minerals as a source of return of their capital. By "return of their capital" we refer to the portion of petitioners' cost of the Brown County farm allocable to the minerals which they conveyed to Henry Energy Corp. However, before we decide this question, we will address the preliminary issues raised in petitioners' brief.

Petitioners contend that we must look to the law of the State of Illinois in deciding whether petitioners retained an economic interest in the minerals conveyed. We need only point out that State law is not controlling in deciding this issue. *Bankers' Pocahontas Coal Co. v. Burnet,* 287 U.S. 308 (1932); *Burnet v. Harmel, supra* at 110.

Petitioners point out that other opinions of the Supreme Court and of this Court that have considered this sale-versus-lease issue have only addressed the economic interest question with respect to cash payments being received. They point out that, in the instant case, in consideration for the mineral interest, petitioners received four parcels of real property and, therefore, such property should not be considered a lease bonus. Although the issue of whether real or personal property constitutes a lease bonus has not been previously decided, we do not feel that a distinction exists. Section 61(a) defines gross income as "all income from whatever source derived." Therefore, if an economic interest is retained in property, and cash or other consideration is received prior to production of minerals from such property, the cash or other consideration will be a lease bonus taxable as ordinary income.

Petitioners also contend that we should look to the following factors in deciding whether the agreement is a sale or a lease: (1) All of the minerals underlying the Brown County farm were conveyed; (2) Henry Energy Corp. was under no obligation to exploit or develop the Brown County farm for oil, gas, or other minerals; (3) it was the intention of petitioners in executing the agreement and the mineral deed to acquire the four parcels of real property and not to receive royalties; (4) petitioners imposed no development duties upon Henry Energy Corp. and possessed no right of reversion to the minerals; and (5) words denoting a sale or exchange were used in the agreement.

In short, petitioners would have us decide the instant case based upon a quantitative analysis of whether the agreement is a sale or a lease. Whether the agreement is a sale or a lease may be indicative of the result, it is by no means determinative for Federal income tax purposes. The distinction between a sale and a lease for Federal income tax purposes depends upon whether the transferor retains

an economic interest in the property transferred. This economic interest concept was enunciated and refined by the Supreme Court in cases involving hydrocarbons. *Herring v. Commissioner, supra; Palmer v. Bender, supra; Bankers Pocahontas Coal Co. v. Burnet, supra; Murphy Oil Co. v. Burnet,* 287 U.S. 299 (1932); *Burnet v. Harmel, supra.* However, in cases involving solid mineral interests, it appears that many courts have been reluctant to follow the economic interest approach and have based their decisions upon factors which petitioners would have us look to in deciding the instant case. *Wood v. United States,* 377 F.2d 300, 304 n. 7 (5th Cir. 1967); P. Maxfield & J. Houghton, Taxation of Mining Operations, sec. 8.03[1][a] (1988). The test to be applied in hydrocarbon cases in deciding the Federal income tax treatment of cash or other consideration received before actual production in a sale-versus-lease context is whether an economic interest is retained.

In the instant case, we must decide whether petitioners retained an economic interest in the minerals underlying the Brown County farm. If petitioners retain a royalty in this mineral property, *Kirby Petroleum Co. v. Commissioner,* 326 U.S. 599 (1946) (net-profits interest); *Palmer v. Bender, supra* (royalty); *Hogan v. Commissioner,* 141 F.2d 92 (5th Cir. 1944), affg. a Memorandum Opinion of this Court (overriding royalty), and, if they have no alternate source of recovery of their capital in the minerals underlying the Brown County farm, *Anderson v. Helvering,* 310 U.S. 404 (1940), the economic interest test will be satisfied. Petitioners have sought to divest themselves of this economic interest through two transactions: (1) They purportedly sold the mineral interest underlying the Brown County farm to Henry Energy Corp.; and (2) they received a royalty from this mineral interest. Although couched in terms of a sale of minerals with a subsequent conveyance of a one-fourth royalty to petitioners, we cannot ignore the substance of the transaction: for Federal income tax purposes petitioners leased their interest in the minerals underlying the Brown County farm and retained a one-fourth royalty of any and all production of oil and gas.

In addition, petitioners must look solely to the extraction of the minerals underlying the Brown County farm for a

return of their capital. *Anderson v. Helvering, supra.* Thus, if petitioners do not bear the ultimate risk of loss for failure of production, regardless of the form of the transaction, no economic interest will exist. In *Anderson,* the leading case in this area, the Supreme Court decided that the taxpayer did not have an economic interest in the minerals in place because the taxpayer had the right to receive the production payment, not only from the oil and gas produced, but also from the sales proceeds of another property interest. In a further refinement of this principle, the Seventh Circuit Court of Appeals decided that additional security in the form of sales proceeds from the disposition of the mineral estate is too unlikely to be availed of to count against the existing economic interest. *Standard Oil Co. (Indiana) v. Commissioner,* 465 F.2d 246 (7th Cir. 1972), affg. 54 T.C. 1099 (1970). Thus, if petitioners do not have to look solely to production for a return of their capital, they have disposed of their economic interest.

Petitioners contend in their brief that they could look to sources other than the extraction of oil or gas attributable to the royalty interest for a return of their capital. These other sources include the four Adams County farms and the farm machinery received by petitioners in consideration for the mineral interest underlying the Brown County farm.

We find petitioners' argument untenable. Petitioners rely upon *Anderson* in their contention that they may look to other sources for a return of their capital. The issue in *Anderson,* as in the instant case, was whether the owner of a mineral interest had made an outright sale or had made a lease, retaining an economic interest in production. The Supreme Court decided that no economic interest was retained because the contract between the parties provided for payment to the taxpayer out of proceeds which might be derived from oil and gas produced from the properties and *"from sales of the fee title to the land conveyed." Anderson v. Helvering, supra* at 412 (emphasis supplied). Decisions following *Anderson* have followed this principle and have disqualified an economic interest when an additional source of payment was provided as a supplement or an alternative to production. *Gibson Products Co. v. United States,* 637 F.2d 1041 (5th Cir. 1981); *Christie v. United States,* 436

F.2d 1216 (5th Cir. 1971); *Scofield v. LaGloria Oil & Gas Co.,* 268 F.2d 699, 708-709 (5th Cir. 1959). In *Anderson* and the hydrocarbon decisions following it, unlike the instant case, the taxpayers were given the right to a supplemental or alternative source for a return of their capital. Petitioners' receipt of the four farms and farm equipment did not constitute supplemental or additional security guaranteeing payment of the royalty. The agreement entered into by petitioners merely reflects that the four farms and farm equipment would be conveyed for the interest in the minerals underlying the Brown County farm and, upon consummation of this transaction, petitioners would receive a one-fourth royalty interest in such minerals. There is a complete absence of any language in the agreement to the effect that the proceeds from the four farms and farm equipment transferred to petitioners shall be used in lieu of, or in the absence of, a royalty payment. The facts clearly show that petitioners must look solely to the extraction of the minerals underlying the Brown County farm for a return of their capital in the minerals underlying the Brown County farm.

The language of the mineral deed suggests that petitioners transferred an interest in real property. The Supreme Court held long ago that although an oil and gas lease may constitute a conveyance of title to the minerals under State law, cash received by the grantor is, nevertheless, a lease bonus because the transaction as a whole is an oil and gas lease, not the sale of a capital asset. *Burnet v. Harmel, supra.*

Petitioners retained an economic interest in the minerals underlying the Brown County farm by retaining a right to receive a specified percentage of all the oil and gas produced. Petitioners looked solely to the extraction of the minerals underlying the Brown County farm for a return of their capital. Therefore, the transaction between petitioners and Henry Energy Corp. constituted an oil and gas lease.

Having decided that petitioners granted an oil and gas lease to Henry Energy Corp., we must decide whether granting of the lease in consideration for four parcels of real property is a like-kind exchange under section 1031. Central to this issue is whether the granting of the lease in

consideration for the real property received is a "sale or exchange of property" for purposes of section 1031.

Petitioners contend that the receipt of property by them in consideration for their conveyance of a mineral interest to Henry Energy Corp. is an exchange of property of like kind. Petitioners concede that the fair market value of the farm equipment is taxable to them as ordinary income.

For petitioners to prevail, they must show that, within the meaning of section 1031, there was a sale or exchange. Section 1031 applies only when the taxpayer has sustained a gain or loss from a sale or exchange. Having held that the total transaction constituted a lease, it follows that there has not been a sale or exchange. Petitioners realized no gain or loss. In *Pembroke v. Helvering,* 23 B.T.A. 1176 (1931), affd. 70 F.2d 850 (D.C. Cir. 1934), the taxpayer was the owner of real property located in Ohio. In 1925, the taxpayer leased the property for a term of 99 years in consideration of an annual rental and a conveyance of a fee interest in other real estate. The taxpayer contended that the property received by him was a like-kind exchange for the granting of the lease. The Board of Tax Appeals decided that the transaction in question was not an "exchange of properties" and that section 203 of the Revenue Act of 1926, a predecessor of section 1031 of the 1954 Internal Revenue Code, did not apply to the transaction. The Board decided, instead, that the transaction was a lease for which the taxpayer received annual rent plus a lease bonus represented by the real property received by him. *Pembroke v. Helvering,* 23 B.T.A. at 1178.

The facts in *Pembroke* are indistinguishable from the facts in the instant case. In the instant case, having decided that the transaction constituted a lease, it follows that the farms received from the lessee, Henry Energy Corp., are a lease bonus and there has been no sale or exchange within the meaning of section 1031.

We reaffirmed this portion of the *Pembroke* holding in *Koch v. Commissioner,* 71 T.C. 54, 70 (1978).[2] In *Koch,* the taxpayer exchanged fee simple interests in real estate for real estate encumbered by 99-year leases. Section 1.1031(a)-1(c), Income Tax Regs., provides that the exchange of a

---

[2]*Stahl v. Commissioner,* T.C. Memo. 1987-323.

leasehold with 30 or more years to run for a fee simple interest in land is an exchange of property of like kind. The Government contended that if the lessee's interest is equal to a fee interest then, by negative inference, the lessor's interest is less than a fee interest. The Court rejected the Government's argument, holding that section 1031 does not require that the exchanged property interests be equal. Although the lessor's interest was not equal to that of the fee simple owner of property not subject to a lease, the Court held that the lessor nevertheless held fee simple title to the real estate. Relying upon *Pembroke,* the Court stated, "The reason for the rule is that owner-lessor does not part with his real property but merely transfers the right to use it for a period of years. The execution of a long-term lease is not the conveyance of a fee." *Koch v. Commissioner, supra* at 70.

The same rule applies in the instant case. When petitioners granted the lease to Henry Energy Corp. they did not part with an interest in real property for Federal income tax purposes, but merely transferred the right to use such property. This holding is consistent with the prior decision of the Board of Tax Appeals in *Butler v. Commissioner,* 19 B.T.A. 718, 728 (1930), when, in explaining the tax results of creating a lease, the Board stated "that a lessee under a 99-year lease, renewable forever, does not, by virtue of the execution of the lease, acquire any ownership of the property which is the subject of the lease, despite the fact that such leases are treated locally as in many respects like conveyances of the fee."

Petitioners rely upon *Crichton v. Commissioner,* 42 B.T.A. 490 (1940), affd. 122 F.2d 181 (5th Cir. 1941). In *Crichton,* the taxpayer conveyed an undivided three-twelfths interest in the "oil, gas, and other minerals in, on and under and that may be produced from" certain lands in consideration for an undivided three-sixths interest in real property. The Board of Tax Appeals decided that the exchange of a *royalty interest* in minerals for a fee qualified as a like-kind exchange.

In the instant case, however, we do not have a situation in which a taxpayer-lessor exchanged a royalty interest for real property. Petitioners, as lessors, granted a lease of a mineral interest while *reserving* a royalty in such interest in

consideration for real property. As we previously decided, the reservation of the royalty interest characterizes the transaction as a lease rather than a sale of the mineral interest. There is no gain or loss to which section 1031 could apply. The execution of a lease does not give rise to a gain or loss. Had petitioners, subsequent to the transaction with Henry Energy Corp., conveyed all or a portion of the one-fourth royalty interest in exchange for an interest in real property, the exchange would then fall within the ambit of *Crichton* and section 1031.

This analysis is consistent with section 1.1031(a)-1(c), Income Tax Regs., which provides: "No gain or loss is recognized if * * * a taxpayer who is not a dealer in real estate exchanges * * * a leasehold of a fee with 30 years or more to run for real estate." The regulation contemplates the transfer of an existing leasehold by the lessee, not the creation of a leasehold. Only a lessee can transfer a leasehold interest, as contemplated by the regulations, because the lessee owns the leasehold and the lessor's property is subject to the leasehold. Petitioners, as lessors, created a leasehold interest in favor of the lessee, Henry Energy Corp. If Henry Energy Corp., subsequent to the transaction involved here, exchanged the leasehold interest it acquired for a fee interest in real estate, the Commissioner has held that such exchange would be nontaxable under section 1031. Rev. Rul. 68-331, 1968-1 C.B. 352.

In accordance with this analysis, when a mineral interest is assigned for real property and the assignor retains a right to receive a specified percentage of all oil and gas produced for the economic life of the mineral deposit, the transaction is a lease for Federal income tax purposes. The granting of an oil and gas lease does not give rise to a gain or loss. The real property received from the lessee as part consideration for the lease is not an "exchange of property" under section 1031 and will, therefore, be taxable as a lease bonus as ordinary income.

Because our decision for the taxable year 1982 affects the amount of the deficiency for the taxable year 1983 which was not taken into account in the statutory notice of deficiency for such year,

*Decision will be entered under Rule 155.*