ROGER AND JEAN MULDAVIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Muldavin v. Commissioner
Docket Nos. 30316-84, 12880-85, 23930-86, 13813-87, 26944-88
United States Tax Court
T.C. Memo 1991-481; 1991 Tax Ct. Memo LEXIS 530; 62 T.C.M. (CCH) 857; T.C.M. (RIA) 91481; September 26, 1991, Filed *530 Decisions will be entered for the respondent. Edward B. Goodrich, for the petitioners. John F. Eiman and David H. Peck, for the respondent. FAY, Judge. GOLDBERG, Special Trial Judge. FAY; GOLDBERG
MEMORANDUM FINDINGS OF FACT AND OPINION These consolidated cases were assigned to Special Trial Judge Stanley J. Goldberg pursuant to section 7443A(b)(4) and Rule 180 et seq. All section references are to the Internal Revenue Code as in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE GOLDBERG, Special Trial Judge: Respondent determined the following deficiencies in, and additions to, petitioners' windfall profit tax: Docket
Additions to Tax, Sections
No.
Year
Deficiency
6653(a)
6653(a)(1)
6653(a)(2)
30316-84
1980
$ 64,407.77
$ 3,220.39
-
-
12880-85
1981
165,782.11
-
$ 8,289.11
*
23930-86
1982
100,784.27
-
5,039.21
*
13813-87
1983
88,971.19
-
4,448.56
*
26944-88
1984
106,420.46
-
5,321.02
*
*531 The issues for decision are: (1) Whether petitioners are "producers," and, therefore, subject to the crude oil windfall profit tax (windfall profit tax); (2) if so, whether the Tax Court has jurisdiction to redetermine deficiencies in their windfall profit tax for the taxable years 1980 through 1984; and (3) whether petitioners are liable for additions to tax pursuant to section 6653(a) for 1980 through 1984. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioners resided in Arcadia, Michigan, when they filed their petitions. On August 10, 1963, petitioner wife, then a single woman known as Jean Ann Bowling Sakalauskas, purchased a parcel of land located in Manistee County, Michigan, in fee simple for $ 3,500. On June 19, 1968, petitioner wife, now Mrs. Muldavin, leased the land to J.L. Orr for the purpose of exploring for and producing oil and gas. The Oil and Gas Lease entered into between petitioner wife and Mr. Orr was for a term of 10 years and so long thereafter as oil and gas were produced. The lease provided, in part, that J.L. Orr, as lessee, was *532 to deliver to the credit of the lessor as royalty, free of cost, in the pipe line to which the lessee may connect its wells, the equal one-eighth part of the oil produced and saved from the leased premises, or at the lessee's option, may pay to the lessor for such one-eighth royalty the market price for oil of like grade and gravity prevailing of the day such oil is run into the pipe line, or into storage tanks.
J.L. Orr subsequently assigned or transferred his interest in the lease to Shell Oil Company (Shell). On February 7, 1970, petitioner wife married petitioner husband (hereinafter together referred to as petitioners). On or about December 13, 1974, Shell commenced oil and gas production on the land from a well identified as Muldavin 2-13 by the Michigan Department of Natural Resources. On June 5, 1975, petitioners entered into a Rental Division Agreement with Shell providing that the terms of the original Oil and Gas Lease between petitioner wife and J.L. Orr were to remain in full force and effect without any alteration to petitioners' ownership of the royalty. On June 26, 1975, petitioners and others executed an Oil Division Order setting forth all parties' interests *533 in Muldavin 2-13. The Order specifically provided that as of December 13, 1974, petitioners owned a 79.39/80.00 of 1/8 royalty interest in Muldavin 2-13. Shell owned a 7/8 working interest in the well. Shell, as operator of Muldavin 2-13 during 1980 to 1984, and Shell Western E&P, Inc., as operator of the well during 1984 (hereinafter collectively referred to as Shell), made the following royalty payments to petitioners and withheld the following amounts of windfall profit tax based on the amount of crude oil removed from the land: Gross Oil Royalty Income
Windfall Profit
Year
Paid to Petitioners
Tax Withheld
1980
$ 259,681.80
$ 65,407.77
1981
447,208.15
168,282.11
1982
334,838.27
108,273.68
1983
350,886.81
94,714.31
1984
454,842.35
114,036.33
Petitioners received Forms 6248, Annual Information Return for Windfall Profit Tax, and Windfall Profit Tax Statements from Shell for each of the years in issue. On part I, Producer or Other Recipient, of the Forms 6248, Shell designated petitioners as individual royalty owners. Petitioners altered the Forms for 1980 and 1983 by designating themselves as "sovereign persons." They also struck a line through Shell's *534 computation of their windfall profit tax liability and replaced it with the word "none." Petitioners timely filed Federal income tax returns for 1980 through 1984, on which they reported their gross royalty income from the crude oil produced. They did not file separate returns for windfall profit tax for any of the years in issue. On Schedules E attached to their 1980, 1981, 1982, and 1983 income tax returns, petitioners claimed a percentage depletion allowance for the oil removed from the premises. Respondent did not disallow any of the claimed depletion allowances. Petitioners inadvertently failed to claim such an allowance for 1984. Petitioners attached the Forms 6248 to their income tax returns for 1980 through 1984. They also attached a Form 6249-A, Royalty Owners Credit for Overpaid Windfall Profit Tax, to their 1980 Federal income tax return, and Forms 6249, Computation of Overpaid Windfall Profit Tax, to their 1981 through 1984 returns. Petitioners also attached a Form 843, Claim for Refund, to their 1984 return. They objected to the perjury jurats on their 1983 and 1984 returns. As with the Forms 6248 for 1980 and 1983, petitioners altered the 1980 Form 6249-A by *535 striking a line through the credit limitation of $ 1,000 and replacing it with "unlimited." In addition, petitioners attached an explanation as to their belief that the windfall profit tax was unconstitutional to their 1981 Federal income tax return. Petitioners did not claim a deduction on their income tax returns for any of the windfall profit taxes withheld by Shell. Rather, petitioners claimed the following payment credits for the amounts withheld: Year
Credit Claimed
1980
$ 65,407.77
1981
168,282.11
1982
108,273.68
1983
94,714.31
1984
111,792.70
For each of the years, petitioners received the full amount of the payment credits through one of three means: (1) Applying it against or reducing their income tax liability; (2) applying part or all of the credit toward their estimated income tax liability for the subsequent year; or (3) receiving an income tax refund check for part or all of the payment credit. OPINION Issue 1. Producer Status
The Crude Oil Windfall Profit Tax Act of 1980 was enacted as section 101(a)(1) of Pub. L. 96-223, 94 Stat. 230, and was effective for periods after February 29, 1980. It was repealed by section 1941(a) of the Omnibus *536 Trade and Competitiveness Act of 1988, Pub. L. 100-418, 102 Stat. 1322, effective for crude oil removed from the premises on or after August 23, 1988. An overview of the tax as it relates to the liability of a producer whose taxes are withheld by the first purchaser can be found in Page v. Commissioner, 86 T.C. 1, 3-6 (1986). The windfall profit tax is imposed upon and is to be paid by the producer of the crude oil removed from the premises. Sec. 4986. The tax is computed under section 4987 as a percentage of the windfall profit defined by section 4988(a) and is collected primarily under the withholding scheme set forth in sections 4995 through 4998. Under that scheme, the first purchaser of the crude oil is generally required to withhold from the proceeds from the sale of the oil paid to the producer an amount equal to the tax imposed by section 4986. Sec. 4995(a)(1). The producer is treated as having paid any amount withheld by the first purchaser. Sec. 4995(a)(4). At the end of the calendar year, the first purchaser is required to provide the producer with a statement reflecting the windfall profit tax withheld from the producer's proceeds from the sale of oil. This *537 is shown on Form 6248, Annual Information Return of Windfall Profit Tax, which is also filed with the Internal Revenue Service. Sec. 4995(a)(3); sec. 51.4997-2(c), Excise Tax Regs., effective after December 6, 1982. Section 4995(a)(5) requires the producer to file a return of windfall profit tax only to the extent provided in the regulations. Section 4997(a) provides that each taxpayer liable for windfall profit tax shall make returns as the Secretary may by the regulations prescribe. Under the regulations, if the correct amount of tax is withheld by the first purchaser, the producer is not required to file a return. Sec. 51.4997-1(a)(2), Excise Tax Regs. However, if the withholding is inadequate, the producer himself must remit the difference with a timely filed return. Sec. 51.4995-3(e), 51.4997-1, Excise Tax Regs. If the tax withheld exceeds the producer's windfall profit tax liability, he may claim the excess as a credit against income tax by attaching to his Federal income tax return copies of all Forms 6248 received from the first purchaser and a Form 6249, Computation of Overpaid Windfall Profit Tax. See sec. 6401; sec. 51.6402-1, Excise Tax Regs. Alternatively, the *538 producer may claim a refund of the excess withheld tax by attaching the Forms 6248 and 6249 to a standard claim for refund, Form 843. Sec. 51.6402-1, Excise Tax Regs. Petitioners assert that they did not possess an interest in the oil in place or have a capital investment in the mineral deposit during the years in issue. Petitioners contend, therefore, that they lacked the economic interest requisite of producers and are not subject to the windfall profit tax. Section 4996(a)(1)(A) defines "producer" as "the holder of the economic interest with respect to the crude oil." Although not defined within chapter 45, the term "economic interest" has the same meaning for purposes of the windfall profit tax as it does for purposes of the income tax. Sec. 51.4996-1(b)(1), Excise Tax Regs. Sec. 1.611-1(b)(1), Income Tax Regs., provides: An economic interest is possessed in every case in which the taxpayer has acquired by investment any interest in mineral in place * * * and secures, by any form of legal relationship, income derived from extraction of the mineral * * * to which he must look for a return of his capital. * * * A person who has no capital investment in the mineral deposit *539 * * * does not possess an economic interest merely because through a contractual relation he possesses a mere economic or pecuniary advantage derived from production. * * *
Although section 1.611-1, Income Tax Regs., purports to adequately define the term "economic interest," a number of cases have expanded the meaning of the term. The courts, however, have found it difficult to single out one recurring factor that clearly indicates ownership of an economic interest in the minerals in place. Tidewater Oil Co. v. United States, 168 Ct. Cl. 457, 339 F.2d 633 (1964); Gulf Oil Corp. v. Commissioner, 86 T.C. 115, 133 (1986), affd. 914 F.2d 396 (3rd Cir. 1990). A taxpayer has an "economic interest" in minerals regardless of the legal form of the interest if he has acquired the interest by investment in the minerals in place, and looks to the extraction of the minerals for the return of his investment. Thomas v. Perkins, 301 U.S. 655, 661, 81 L. Ed. 1324, 57 S. Ct. 911 (1937); Palmer v. Bender, 287 U.S. 551, 53 S. Ct. 225, 77 L. Ed. 489 (1933); Gulf Oil corp. v. Commissioner, supra. The fact that the taxpayer obtains an economic advantage from the production of the mineral is not adequate to create an economic interest. *540 Helvering v. Bankline Oil Co., 303 U.S. 362, 82 L. Ed. 897, 58 S. Ct. 616 (1938); Thomas v. Perkins, supra.Rather, "The test * * * is whether the taxpayer has a capital investment in the oil in place which is necessarily reduced as the oil is extracted." Kirby Petroleum Co. v. Commissioner, 326 U.S. 599, 603, 90 L. Ed. 343, 66 S. Ct. 409 (1946). Kirby Petroleum Co. v. Commissioner, supra, involved a taxpayer who owned certain lands in fee simple which he leased for the purpose of producing oil and gas in exchange for a cash bonus, a royalty in the usual form, and a share of the net profits realized by the lessees from their operations under the lease. In holding that the landowner-lessor was entitled to an allowance for depletion, the Court stated: If the additional payment in these leases had been a portion of the gross receipts from the sale of the oil extracted by the lessees instead of a portion of the net profits, there would have been no doubt as to the economic interest of the lessors in such oil. This would be an oil royalty. The lessors' economic interest is no less when their right is to share a net profit. As in Thomas v. Perkins, 301 U.S. 655, 81 L. Ed. 1324, 57 S. Ct. 911, their only source of payment is from the net profit *541 which the oil produces. In both situations the lessors' possibility of return depends upon oil extraction and ends with the exhaustion of the supply. Economic interest does not mean title to the oil in place but the possibility of profit from that economic interest dependant solely upon the extraction and sale of the oil. [Fn. ref. omitted.]
Kirby Petroleum Co. v. Commissioner, supra at 604. Although title to the oil does not itself vest a taxpayer with an economic interest, it is clear that the lessor-fee simple landowner clearly has a capital investment in the minerals in the land. Furthermore, and contrary to petitioners' argument, the capital investment required under section 1.611-1, Income Tax Regs., is an investment in the mineral deposit, not the production facilities. Kirby Petroleum Co. v. Commissioner, supra at 602-603; compare Commissioner v. Southwest Exploration Co., 350 U.S. 308, 314-315, 100 L. Ed. 347, 76 S. Ct. 395 (1956). As the Supreme Court explained in Anderson v. Helvering, 310 U.S. 404, 408-409, 84 L. Ed. 1277, 60 S. Ct. 952 (1940): The sole owner and operator of oil properties clearly has a capital investment in the oil in place, if anyone has, and so is taxable on the gross proceeds *542 of production and is granted a deduction from gross income as compensation for the consumption of his capital. [Citations omitted]. By an outright sale of his interest for cash, such an owner converts the form of his capital investments, severs his connection with the production of oil and gas and the income derived from production, and thus renders inapplicable to his situation the reasons for the depletion allowance. * * * The holder of a royalty interest -- that is, a right to receive a specified percentage of all oil and gas produced during the term of the lease -- is deemed to have "an economic interest" in the oil in place which is depleted by severance. Palmer v. Bender, 287 U.S. 551, 557, 77 L. Ed. 489, 53 S. Ct. 225; Murphy Oil Co. v. Burnet, 287 U.S. 299, 77 L. Ed. 318, 53 S. Ct. 161; Burnet v. Harmel, 287 U.S. 103, 77 L. Ed. 199, 53 S. Ct. 74. * * *
See Tenneco West, Inc. v. Marathon Oil Co., 756 F.2d 769, 772 (9th Cir. 1985). In short, if a taxpayer retains a royalty in his mineral property and has no alternate source of recovery of his capital in his minerals, then the economic interest test will be satisfied. Crooks v. Commissioner, 92 T.C. 816, 821 (1989). In the present case, petitioners were the sole owners of land purchased *543 in fee simple by petitioner wife in 1963. Petitioners leased the land to J.L. Orr, who subsequently transferred his interest to Shell, for purposes of exploring for and producing oil and gas. Under the Oil and Gas Lease, petitioners received an approximate one-eighth royalty for the oil produced. They looked solely to the extraction of the oil for a return of their capital. Therefore, we hold that petitioners possessed an economic interest in the oil in place which was welled from Muldavin 2-13. Accordingly, we also hold that they are producers of the crude oil and are subject to the windfall profit. Furthermore, the credibility of petitioners' contention that they did not possess an economic interest in the oil for purposes of the windfall profit tax is diminished by the fact that they claimed a deduction for the percentage depletion allowance on their 1980 through 1983 Federal income tax returns. As stated above, "economic interest" has the same meaning for purposes of windfall profit tax as it does for income tax. Issue 2. Tax Court Jurisdiction
Having found that petitioners are producers of the crude oil, we now address petitioners' second contention that we are *544 without jurisdiction to redetermine any deficiencies in their windfall profit tax for 1980 through 1984. The Tax Court is a court of limited jurisdiction. Logan v. Commissioner, 86 T.C. 1222, 1226 (1986); Medeiros v. Commissioner, 77 T.C. 1255, 1259 (1981); Wilt v. Commissioner, 60 T.C. 977, 978 (1973). Our jurisdiction is precisely described by statute and we may not enlarge upon that statutory jurisdiction. Sec. 7442; Breman v. Commissioner, 66 T.C. 61, 66 (1976); Bolnick v. Commissioner, 44 T.C. 245, 258 (1965); Keefe v. Commissioner, 15 T.C. 947 (1950). In general, Tax Court jurisdiction exists only if a timely petition has been filed from a validly issued notice of deficiency. Secs. 6212 and 6213; Rules 13, 20; Midland Mortgage Co. v. Commissioner, 73 T.C. 902, 907 (1980); Hannan v. Commissioner, 52 T.C. 787, 791 (1969); Myers v. Commissioner, 28 T.C. 12, 13 (1957). In these cases, respondent determined a deficiency in petitioners' windfall profit tax for 1980 through 1984 and timely issued notices of deficiency for each of those years as authorized by section 6212. Petitioners timely filed a petition for each year. Petitioners contend *545 that there is no deficiency in their windfall profit taxes. Petitioners further contend that because they claimed credits for the windfall profit taxes withheld against their income taxes, any existing deficiency is in their Federal income tax, not their windfall profit tax. Therefore, petitioners maintain that the notices of deficiency are invalid and that we may not redetermine any deficiencies in their windfall profit tax. In an income tax deficiency proceeding, the Court's jurisdiction is generally limited by section 6214 to a redetermination of the correct amount of the deficiency as defined in section 6211. An income tax deficiency is computed under section 6211 with reference to "the tax imposed by subtitle A," and, as such, all taxes, credits, deductions, exclusions, etc., imposed or allowed in subtitle A are to be taken into consideration in calculating the existence of a deficiency. Logan v. Commissioner, supra at 1226-1227; Martz v. Commissioner, 77 T.C. 749, 753 (1981). Section 6402 authorizes the Internal Revenue Service to credit (within the applicable period of limitations) any overpayment of tax against any liability in respect of an internal revenue *546 tax on the part of the person who made, or is deemed to have made, the overpayment. Pursuant to section 51.6402-1, Excise Tax Regs., overpayments of windfall profit tax may be claimed as a credit against the taxpayer's income tax liability. However, the credit for overpaid windfall profit tax liability allowed under section 6402 is not a credit allowable under subtitle A, and, therefore, is not taken into account when computing an income tax deficiency. Logan v. Commissioner, supra at 1228. The credit allowed for such an overpayment does not reduce the assessed income tax liability; rather, it is considered as a payment and disregarded in the determination of an income tax deficiency. Logan v. Commissioner, supra; sec. 301.6211-1(b), Proced. and Admin. Regs. The same deficiency procedures of sections 6211 through 6214 that apply to income tax also apply to the assessment of windfall profit tax. Logan v. Commissioner, supra. As with regard to income tax, section 6211(a) defines a windfall profit tax deficiency as the amount by which the tax imposed by chapter 45 exceeds -- (1) the sum of (A) the amount shown as the tax by the taxpayer upon his *547 return, * * * plus (B) the amounts previously assessed (or collected without assessment) as a deficiency, over --
(2) the amount of rebates * * * made. Section 6211(b)(5) provides that the amount withheld under section 4995(a) which is not otherwise shown on a return by a producer shall be treated as a tax shown by the producer on a return for the taxable period. Section 6211(b)(2) defines the term "rebate" as "so much of an abatement, credit, refund, or other payment, as was made on the ground that the tax imposed by * * * Chapter 45 * * * was less than the excess of the amount specified in subsection (a)(1) over the rebates previously made." Section 6512(b)(1) "clearly authorizes this Court to determine an overpayment of windfall profit tax, but only in the context of a windfall profit tax deficiency proceeding." Logan v. Commissioner, supra at 1229. Therefore, we have jurisdiction to determine a petitioner's entitlement to a credit for overpayment of windfall profit tax only when the Commissioner has first determined a deficiency in windfall profit tax for the taxable year. Logan v. Commissioner, supra.
Petitioners are incorrect in arguing that if any *548 deficiency exists, it is in their income tax as a result of the credits claimed for the windfall profit tax withheld by Shell. In fact, if respondent had issued notices of deficiency only for petitioners' income tax for the same years, we would not have jurisdiction to redetermine their windfall profit tax. Logan v. Commissioner, supra. As the credit allowed under section 6204 does not relate to income tax, respondent properly issued the notices of deficiency for petitioners' windfall profit taxes. Therefore, we have jurisdiction to redetermine if petitioners are entitled to a credit for overpayment of windfall profit tax. Logan v. Commissioner, supra at 1229. Based on our holding above that petitioners are producers, we sustain respondent's deficiency determination of the windfall profit tax for each of the years 1980 through 1984. Shell withheld the correct amount of tax from petitioners' crude oil proceeds each year. Petitioners claimed the amounts withheld by Shell as a credit against their income taxes. The result was a "rebate" to them of the entire amount withheld. Consequently, under section 6211(a) the deficiency in their windfall profit tax for *549 each year was for the full amount of tax imposed by section 4986, as determined by respondent. Therefore, respondent's deficiency determinations are sustained. Issue 3. Additions to Tax
Finally, respondent determined petitioners are liable for additions to tax pursuant to section 6653(a) for negligence or intentional disregard of rules or regulations for 1980 through 1984. Negligence under section 6653(a) is lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners bear the burden of proving respondent's determination of the additions to tax is erroneous. Luman v. Commissioner, 79 T.C. 846, 860-861 (1982). Petitioner husband has prepared petitioners' Federal income tax returns since 1975. In preparing their returns for 1980 through 1984, he independently researched the taxability of the windfall tax profit and also consulted his attorney with regard to the same matter. Petitioner husband concluded that the tax was unconstitutional. The Supreme Court of the United States upheld the constitutionality of the windfall profit tax in United States *550 v. Ptasynski, 462 U.S. 74, 76 L. Ed. 2d 427, 103 S. Ct. 2239 (1983). However, petitioners argue their belief that the crude oil windfall profit tax was unconstitutional was honestly held and not untenable. We have difficulty accepting petitioners' argument. First, petitioners ignored the advice of their attorney, Ms. Joan McKay, in 1981. Ms. Joan McKay informed them that a constitutional challenge to the windfall profit tax would be very difficult, with possibly a one in ten chance of succeeding. Ms. McKay suggested, however, that if petitioners chose to challenge the tax, they take one of three specified courses of action. Petitioners chose not to take any of the three courses. One possibility Ms. McKay listed was pursuing a claim for refund and suing in the United States District Court when the claim was denied. Ms. McKay noted that petitioners should do this by filing a Form 843, and not a Form 6249-A, as they indicated they intended to do. Petitioners did not file a Form 843 until 1985, when they filed their 1984 Federal income tax return. Petitioners attached a statement to their 1981 Federal income tax return explaining their belief that the tax was unconstitutional as "a taking without just compensation." *551 Ms. McKay informed petitioners in 1981 that she believed this specific argument to be weak on the basis that it has "been raised a number of times, never successfully." Furthermore, petitioners filed their 1983 and 1984 returns, after the Supreme Court had upheld the constitutionality of the windfall profit tax, in the same general manner as their 1980, 1981, and 1982 returns. To us, this indicates that petitioners either loosely held their belief that the tax was unconstitutional from the beginning or simply chose to ignore the law. Petitioners also claim that they attached the Forms 6248 and 6249 to their income tax returns, altering some of them, only to convey their view that Shell had "mistakenly" withheld the tax from their royalties since they were not producers of the crude oil. However, this position contradicts petitioners' claim of a depletion allowance on their 1980, 1981, 1982, and 1983 returns. To claim a depletion allowance petitioners must possess an "economic interest." Possession of such an interest would also classify them as a producer of crude oil under section 4996(a)(1)(A). The omission of a claimed depletion allowance on their 1984 return was simply an *552 oversight by petitioner husband in preparing the return. Based upon the entire record, we find that petitioners have failed to prove that they misunderstood the law or honestly held a position not obviously untenable. Therefore, we hold that petitioners are liable for additions to tax pursuant to section 6653(a) for negligence or intentional disregard of rules or regulations for 1980 through 1984. Respondent is sustained on this issue. Decisions will be entered for the respondent. Footnotes
*. 50 percent of the interest due on the underpayment of tax attributable to negligence or intentional disregard of rules and regulations.↩